UNITED STATES of America,
Plaintiff-Appellee,

v.

Leola Studdert GISSEL, Executrix of the
Estate of Julius Schutze Gissel, et
al., Defendants-Appellants.

UNITED STATES of America,
Plaintiff-Appellee,

v.

C. J. THIBODEAUX AND COMPANY
and the Travelers Indemnity Company, Defendants-Appellants.

No. 73–2829.

United States Court of Appeals,
Fifth Circuit.

April 26, 1974.

Robert M. Julian, Houston, Tex., for
C. J. Thibodeaux & Co., et al.

Alan S. Dale, Houston, Tex., for Leola
S. Gissel.

Jack Shepherd, Asst. U. S. Atty., Anthony J. P. Farris, U. S. Atty., Houston, Tex., Morton Hollander, Chief, Appellate Sec., Civ. Div., Lawrence F. Ledebur, Chief, Admiralty & Shipping Section, Robert E. Kopp, Dept. of Justice, Washington, D. C., Charles B. Wolfe, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before ALDRICH, Senior Circuit Judge,* and BELL and GEE, Circuit Judges.

ALDRICH, Senior Circuit Judge:

These are two consolidated actions arising out of the bankruptcy and the consequent failure of the owners of an American vessel, the S. S. SEA PIONEER, to pay customs duties imposed by virtue of 19 U.S.C. § 257 [1] on entry following repairs made in a foreign country. Defendants Gissel and Thibodeaux,[2] are so-called berthing agents whose business it is to make arrangements for entry, docking, attendance of customs agents, etc. and clearance, on behalf of vessels entering United States ports where they offer their services. In connection therewith each defendant annually files a blanket bond specified to apply to all vessels entered and cleared by them in the course of the year. The government is the obligee. In May 1964, the S. S. SEA PIONEER docked at Port Arthur, Texas, using Gissel's services. Having been repaired while abroad, she incurred a duty obligation finally liquidated in 1967 at $14,217. In October 1965, the vessel docked at Galveston, Texas, using Thibodeaux's services, and having again been repaired abroad, incurred a duty obligation finally liquidated in 1968 at $57,674. The owners having become bankrupt without having paid, and the vessel having been sold abroad without satisfying these claims, the government sued defendants on their bonds. The district court found for the government for the penal sum ($10,000) of each bond, and defendants appeal. In a nutshell, it is defendants' position that their bond covers only obligations for routine services rendered while the vessel was in port, and which they specifically requisitioned by executing Customs Form 3171, while the government claims that it covers the whole spectrum of the vessel's liability.

At least at first blush the government appears correct. The bonds, executed on Customs Form 7569, provided,

"(1) If the above-bounden principal shall pay to the collector of customs of said port(s) promptly on demand such penalties as may be incurred by the vessels, vehicles, or aircraft, together with the sums chargeable under law and regulations for such services as may be performed for said vessels, vehicles, or aircraft by customs officers or employees, and *shall promptly pay*

---

* Hon. Bailey Aldrich, Senior Circuit Judge of the First Circuit, sitting by designation.

1. Now 19 U.S.C. § 1466.

2. Strictly, Gissel, formerly d/b/a Collin & Gissel, is now deceased and is represented by his executrix, and Thibodeaux is C. J. Thibodeaux & Co. Also named defendants, but not embraced in that term as used herein, are two indemnity companies that signed Gissel's and Thibodeaux's bonds as sureties.

*any duties*, charges, exactions, penalties, or other sums found legally due the United States from any master or other proper officer or owner of said vessels, vehicles, or aircraft on account of said vessels, vehicles, or aircraft." (Emphasis suppl.)

Defendants contend, (a) that the bond does not in terms cover the duty imposed on account of foreign repairs; (b) that even if the form of the bond does in terms purport to cover such duties, in the context of its execution they were not covered when a berthing agent, rather than the vessel, was the party executing it; and (c) that in any event, although executing the bonds as principals, as between themselves and the vessel the agents were only sureties, and affording an extension to the vessel effected their discharge. Consideration of these defenses requires examination of the total circumstances.

 Pursuant to statutory authority, 19 U.S.C. §§ 1623, 1624, the Treasury Department adopted regulations under which an entering vessel itself, or by its agent, must apply for customhouse and attendant services and give bond for payment. It is further provided that if a vessel wishes to clear without payment of duty resulting from foreign repairs it must make a deposit or give bond for such. 19 C.F.R. § 4.14. Defendants' contention that the bonds which they signed did not in terms cover such duties, based on a construction they seek to give the prefatory "whereas" clauses, is not only unpersuasive in itself in view of the breadth of language, including the fact that there are four paragraphs in the bond referring to duties, but is firmly rebutted by the fact that the bond form which defendants signed, No. 7569, is particularly specified in 19 C.F.R. § 4.14 as suitable for covering the duty due on account of repairs. Defendants' point, accordingly, must be that

for some reason, although they signed such a broad bond, the intent was for their liability to be limited to only some, and not this portion, of the bond's apparent undertakings.

 Nothing in the language of the bond suggests a limitation. Nor did defendants' later applications for permits to unlade the S. S. SEA PIONEER requesting only certain services, modify the bonds, which on their face applied in toto to any vessel "entered and cleared" by defendants. It is true, as defendants assert, that there is no statutory liability imposed upon a berthing agent for customs duties. Correspondingly, the statute provides that for such services as, concededly, are normally ordered by an agent, a bond shall be given by the "master, owner, or agent of such vessel," 19 U.S.C. § 1451, whereas a duty bond is merely required to be "given," with no mention made of agents. 19 C.F.R. § 4.-14. It does not follow, however, that if an agent voluntarily gives a bond which in terms covers obligations of his principal, it should be unenforcible.[3] We see no reason why an agent may not furnish credit as a service to his principal if he wishes to. *Cf.* Caldwell Shipping Co. v. United States, 53 Cust.Ct. 311 (1964) (payment of duty by agent).

 It must equally follow that since the very purpose of furnishing a duty bond is to permit the vessel to clear without paying the duty, the agent cannot claim that permitting the vessel to depart was an unconsented-to release of the security, or extension of credit to the principal, which discharged the surety. Nor are we persuaded by the argument that the government should have proceeded with more dispatch against the vessel. It may be, as defendants suggest, that berthing agents were never charged for uncollectible duty before, but, as the district court held, this does not mean that the liability was not

---

3. For doubtless good and sufficient reason, Gissel and Thibodeaux do not claim that, as they were agents of a disclosed principal (the vessel or its owners), under agency princi-ples the principal was the party chargeable and they were not. We do not, accordingly, pursue this question.

clearly undertaken. We find no ambiguity in the instrument itself, or in the surrounding circumstances.

Affirmed.