**ERIE NAVIGATION COMPANY, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**C.D. 4820; Court No. 76–5–01081.**

United States Customs Court.

Aug. 27, 1979.

Scott H. Elder, Thompson, Hine & Flory, Cleveland, Ohio, of counsel, for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D. C., David M. Cohen, Branch Director, Commercial Litigation Branch, Joseph I. Liebman, Atty. in Charge, Field Office for Customs Litigation, New York City (Jerry P. Wiskin, New York City, at the trial; William F. Atkin, Glenn E. Harris and Jerry P. Wiskin, New York City, on the briefs), for defendant.

RE, Chief Judge:

Plaintiff, the owner and operator of the vessel M/V Day Peckinpaugh, brought this action to recover customs duties paid on repairs made to the vessel at a foreign port. The vessel, documented under the laws of the United States, was engaged in transporting bulk cement on Lake Ontario between the Canadian port of Picton, Ontario, and the American ports at Rome and Rochester, New York. In August, 1973, the vessel was drydocked at Port Weller, Ontario, Canada, where the repairs were made.

Upon return to a United States port, duties were assessed on the cost of the foreign repairs pursuant to the provisions of section 1466 of title 19 of the United States Code. In pertinent part, section 1466(a) provides:

"The equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the expenses of repairs made in a foreign country upon a vessel documented under the laws of the United States to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade, shall, on the first arrival of such vessel in any port of the United States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country. . . ."

Subsection (b) of section 1466 provides for the remission or refund of duties paid for "necessary repairs" caused by "stress of weather or other casualty." *See Suwannee Steamship Company v. United States,* 435 F.Supp. 389, 79 Cust.Ct. 19 (1977). Plaintiff is not seeking a remission of duties under that subsection, but rather claims that section 1466(a), under which the duties were assessed, is unconstitutional.

Plaintiff does not dispute the amount of duties paid, but claims that they should not have been assessed under the special circumstances presented. Specifically, it contends that, on the facts of this case, section

1466(a) is unconstitutional, and that the assessment of duties is arbitrary and capricious.

The vessel, by its Certificate of Inspection issued by the United States Coast Guard, is limited to operations on Lake Ontario and the New York State Barge Canal. Plaintiff alleges that on the American side of Lake Ontario, or the New York State Barge Canal, there are no ports with drydock facilities which could accommodate the vessel. Facilities are available at Port Weller, Ontario, Canada. In order to renew the required Certificate of Inspection, the vessel must undergo an "inspection, site and survey" every five years at a drydock facility. The drydocking, at the Canadian port in August, 1973, was for the purpose of complying with this requirement.

Since there was no drydock facility at an American port on Lake Ontario, or the New York State Barge Canal, and since the vessel was allegedly limited by its Certificate of Inspection, plaintiff asserts that it could not comply with the five-year drydocking requirement at an American port. Consequently, drydocking of the vessel at the Canadian port was compelled by force of law.

Furthermore, plaintiff asserts that, even if the vessel was authorized to proceed to an American drydock, the cost of the trip would have added an unreasonable economic burden that served no useful purpose.

Plaintiff's contention that, in this case, the application of the statute was arbitrary and capricious is essentially three-fold. First, plaintiff argues that it was impossible for the vessel to reach an American drydock because of its restriction to Lake Ontario and the New York State Barge Canal in its Certificate of Inspection. Second, it states that, since there are no drydocks on the American side of Lake Ontario and on the New York State Barge Canal to accommodate the vessel, the assessment of duty upon the repairs done in Canada bears no reasonable relationship to the legislative purpose of section 1466(a) to protect the American shipbuilding industry. Finally, plaintiff submits that the expense of proceeding to an American port for the required repairs would be so burdensome as to render the application of the statute unconstitutional.

■ Plaintiff can only succeed on its constitutional challenge by rebutting the strong presumption that legislation duly enacted by Congress is constitutional. As stated in *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976):

> "It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way. *See, e. g., Ferguson v. Skrupa,* 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *Williamson v. Lee Optical Co.,* 348 U.S. 483, 487–488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955)."

A corollary to that basic presumption of constitutionality,

> ". . . is the principle that, when one interpretation of a statute would create a substantial doubt as to the statute's constitutional validity, the courts will avoid that interpretation absent a 'clear statement' of a contrary legislative intent. When a statute is fairly subject to a variety of interpretations all but one of which would make it unconstitutional, then the courts must presume Congress intended the interpretation which is constitutionally permissible. *See, e. g., United States v. Rumely,* 345 U.S. 41, 45, 73 S.Ct. 543, 97 L.Ed. 770 (1953); *Gutknecht v. United States,* 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970)." *United States v. Thompson,* 147 U.S.App.D.C. 1, 6, 452 F.2d 1333, 1337 (D.C.Cir.1971), *cert. denied,* 405 U.S. 998, 92 S.Ct. 1251, 31 L.Ed.2d 467 (1972).

Since plaintiff challenges the application of section 1466 to this particular case, it must produce "facts essential to a determination respecting the constitutional claim."

*United States v. Canty,* 152 U.S.App.D.C. 103, 111, 469 F.2d 114, 121 (D.C.Cir.1972). Plaintiff's failure at the trial to prove its factual allegations compels the conclusion that it did not sustain its burden of proof.

Plaintiff asserts that, because the vessel's Certificate of Inspection restricted its operations to Lake Ontario and the New York State Barge Canal, it was impossible for it to reach an American drydock. Defendant's witness, Commander Daniel Mania, United States Coast Guard, however, testified that plaintiff could have applied for an amendment to the Certificate of Inspection. The amendment would have permitted the vessel to sail outside of Lake Ontario, or the New York State Barge Canal, to a repair facility at the American port in Lorain, Ohio, or Staten Island, New York. Commander Mania also testified that there was no record that the plaintiff had made such an application. Clearly, plaintiff failed to establish that its vessel could not proceed to an American drydock facility through the New York State Barge Canal, e. g., the one located at Staten Island, New York.

In its complaint, plaintiff alleged that the cost of reaching an American drydock facility required an "additional expenditure in excess of $12,000." At trial, however, it introduced no evidence to show the cost of the trip to an American drydock facility. Plaintiff clearly failed to prove its allegation of "additional expenditure."

Crucial to plaintiff's constitutional arguments are its contentions as to the limitation of its operating certificate for repairs outside of Lake Ontario and the New York State Barge Canal, and the excessive cost of such a trip even if authorized. The record does not sustain plaintiff's allegations, nor does it support a finding that the assessed repairs could only have been performed in a foreign shipyard.

■ Notwithstanding plaintiff's deficiencies of proof, it nevertheless persistently urges this court to hold that section 1466(a) is unconstitutional as applied to the facts of this case. It is the opinion of this court that, even if plaintiff had proven its factual allegations, it has not demonstrated that

section 1466(a) is an unconstitutional exercise of the legislative power of the Congress.

■ Whether a statute is unconstitutional, as a violation of plaintiff's fifth amendment right to due process, depends initially upon whether it is a proper subject matter for the exercise of the legislative power. *See Nebbia v. New York,* 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934). It must also be determined whether the method selected has a rational relation to the purpose sought to be attained by the statute. *Id.* at 525, 54 S.Ct. 505. It has been stated that as long as "any state of facts either known or which could reasonably be assumed" supports the judgment of Congress, a rational relationship is deemed to exist. *United States v. Carolene Products Co.,* 304 U.S. 144, 154, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938).

It is clear that the purpose of section 1466(a) was to protect the American shipbuilding and repairing industry. *United States v. Gissel,* 353 F.Supp. 768, 772 (S.D. Tex.1973), *aff'd,* 493 F.2d 27 (5th Cir. 1974). In addition to noting the Congressional purpose of the statute, in *Suwannee Steamship Company v. United States,* 435 F.Supp. 389, 394, 79 Cust.Ct. 19, 26, C.D. 4708 (1977), this court stated that:

"Both the hearings of the Senate Committee, and the committee's final report on section 466, evidence the concern of the committee members that the House amendment would have provided insufficient protection for American shipyards, the class for whose benefit the section was originally formulated. *See Senate Hearings* on H.R. 2667. 71st Cong., 1st Sess., Vol. XVII at 537–46 (1929) . . . S.Rep.No. 37, 71st Cong., 1st Sess. 72 (1929)."

The Supreme Court of the United States, in *Hampton & Co. v. United States,* 276 U.S. 394, 412, 48 S.Ct. 348, 353, 72 L.Ed. 624 (1928), held that the protection of American industry, through the levy of customs duties, is permissible subject matter for the exercise of the legislative power. In *Hamp-*

*ton,* the basic issue was the validity of the assessment of additional duties on certain imports pursuant to the "flexible tariff" provision of title III of the Tariff Act of 1922, 42 Stat. 934 (1922). The "flexible tariff" provision was challenged on two grounds: first, that it was an illegal delegation of legislative power to the President; second, that the object of the statute, the protection of American industry, was impermissible. The court held that the protection of American industry, through the levy of customs duties, was a permissible exercise of legislative power which had a history dating back to the second act of Congress in 1789. *Id.* at 412, 48 S.Ct. 348. It also found that the "flexible tariff" provision was not an illegal delegation of legislative power to the President since the statute prescribed "intelligible" principles for the exercise of the discretion delegated to the President. *Id.* at 409, 48 S.Ct. 348. Since the *Hampton* case teaches that the protection of American industry, through the levy of customs duties, is a permissible legislative object, section 1466(a) cannot be considered constitutionally infirm as an inappropriate exercise of the legislative power.

Citing the *Nebbia* case, the plaintiff stresses that the guaranty of due process "demands that the means selected (in this case the imposition of duties) must have a real and substantial relation to the object sought to be attained." Specifically, plaintiff complains that the assessment of duties on the repairs bears no rational relation to the object of the statute, because there are *no drydocks on the American side of Lake Ontario* or on the New York State Barge Canal where the repairs could have been performed. This assertion is unsupportable since there are American drydock facilities at Lorain, Ohio, Staten Island, New York, and other locations in the Great Lakes region. Pursuant to the statutory purpose, their interests are protected by the assessment made upon the foreign repairs.

The imposition of duties upon foreign ship repairs, as intended by the statute, increases the cost of the foreign repairs. The assessment, therefore, serves as a nega-

tive incentive, and is intended to induce a shipowner to choose a United States facility for repairs. Plaintiff has not demonstrated that the statute bears no rational relation to the object sought to be attained, namely, affording protection to the American shipbuilding industry. The fact that plaintiff chose a course of action which required an assessment of duties does not make the application of section 1466(a) so unreasonable as to constitute a violation of its alleged fifth amendment due process rights.

Had plaintiff proven that it was impossible for its vessel, under its Certificate of Inspection, to reach an American drydock facility for the required inspection, the question would then be presented as to the reasonableness of the statute as applied to the particular case. On this record, plaintiff did not prove that it was impossible for its vessel to leave Lake Ontario in order to reach an American drydock for the required inspection and repairs.

It is fundamental in our constitutional system that the judicial power extends to "cases" and "controversies" properly presented for adjudication. U.S.Const. art. III, § 2. *See Flast v. Cohen,* 392 U.S. 83, 94–95, 88 S.Ct. 1942, 1949–1950, 20 L.Ed.2d 947 (1968). In *United States v. Raines,* 362 U.S. 17, 20–21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960), the Supreme Court noted that:

"The very foundation of the power of the federal courts to declare Acts of Congress unconstitutional lies in the power and duty of those courts to decide cases and controversies properly before them. This was made patent in the first case here exercising that power—'the gravest and most delicate duty that this court is called on to perform.' *Marbury v. Madison,* 1 Cranch 137, 177–180, 2 L.Ed. 60. This Court, as is the case with all federal courts, 'has no jurisdiction to pronounce any statute, either of a State or of the United States, void, because irreconcilable with the Constitution, except as it is called upon to adjudge the legal rights of litigants in actual controversies. In the exercise of that jurisdiction, it is bound

165

by two rules, to which it has rigidly adhered: one, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.' *Liverpool, New York & Philadelphia S. S. Co. v. Commissioners of Emigration,* 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899."

Plaintiff vigorously maintains that the statute compels it to choose between two cost-burdensome alternatives, namely, to pay the duties assessed on the foreign repairs, or to proceed to an American drydock to comply with the inspection/certification requirement. It is implicit in plaintiff's argument that it has the option to choose where the repairs will be made. It cannot complain that, as a consequence of its choice, the statute imposes a monetary burden. *See City of Pittsburgh v. Alco Parking Corp. et al.,* 417 U.S. 369, 94 S.Ct. 2291, 41 L.Ed.2d 132 (1974). *See also, Alaska Fish Salting & By-Products Co. v. Smith,* 255 U.S. 44, 41 S.Ct. 219, 65 L.Ed. 489 (1921); *A. Magnano Co. v. Hamilton,* 292 U.S. 40, 54 S.Ct. 599, 78 L.Ed. 1109 (1934).

Plaintiff's argument that section 1466(a) imposes a monetary burden upon its business does not present an issue of constitutional magnitude.

It is the determination of the court that plaintiff has neither proven its factual allegations, nor established that section 1466(a) is unconstitutional as applied. Plaintiff's action is dismissed.

Judgment will be entered accordingly.