**FUNDICAO TUPY S.A. and Tupy American Foundry Corporation, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**Court No. 86–06–00765.**

United States Court of
International Trade.

Jan. 13, 1987.

Freeman, Wasserman & Schneider (Jack Gumpert Wasserman and Patrick C. Reed, New York City, on the motion), for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch (J. Kevin Horgan, Washington, D.C., on the motion), for defendant.

## MEMORANDUM OPINION AND ORDER OF ASSIGNMENT

RE, Chief Judge:

Plaintiffs, Fundicao Tupy S.A. and Tupy American Foundry Corporation, challenge a "final" injury determination made by the International Trade Commission (ITC). The ITC's determination pertained to the importation of malleable cast-iron pipe fittings from Brazil. Plaintiffs also challenge the affirmative less-than-fair-value determination which was made by the International Trade Administration (ITA) of the Department of Commerce.

This action is unassigned, and, pursuant to the provisions of 28 U.S.C. § 255(a)(1982) and USCIT Rule 77(d)(2), plaintiffs move before the chief judge for its assignment to a three-judge panel.

The question presented is whether the contentions and reasons set forth by the plaintiffs, taken together, warrant a finding that the action raises issues which justify the assignment of this action to a three-judge panel. Since the chief judge finds that the issues raised by plaintiffs in this action have "broad or significant implications in the administration or interpretation of the customs laws," the motion for a three-judge panel is granted.

■ In an antidumping proceeding, the ITC must determine whether an industry in the United States is materially injured, or threatened with material injury, by the imports of merchandise from a particular country. *See* 19 U.S.C. § 1673d(b)(1) (1982). Before making this determination, the ITC is directed·by statute to consider (1) the volume of the imports, (2) the effect of the imports on prices in the United States for like products, and (3) the impact of the imports on domestic producers of like products. Tariff Act of 1930, § 771(7)(B), (C), 19 U.S.C. § 1677(7)(B), (C) (1982). When the imports are from two or more countries, for purposes of volume and price, the ITC is directed to

cumulatively assess the volume and effect of imports from two or more countries of like products subject to investigation if such imports compete with each other and with like products of the domestic industry in the United States market.

Trade and Tariff Act of 1984, § 612(a)(2)(A), 19 U.S.C. § 1677(7)(C)(iv) (Supp. III 1985) (cumulation statute).

In this case, the ITC cumulatively assessed the volume and effect of imports from Brazil, Korea, and Taiwan. The ITC entered a final affirmative injury determination for all three countries. *Certain Cast-Iron Pipe Fittings from Brazil, the Republic of Korea, and Taiwan*, 51 Fed. Reg. 18,670 (1986).

Plaintiffs contend that the ITC's finding of injury, as to the imports from Brazil, is

based on an incorrect and improper interpretation of section 612, the cumulation statute, and raises issues of great significance in the administration of the nation's customs laws. In support of this contention, plaintiffs refer to the increasing number of antidumping and countervailing duty investigations from two or more countries which will be directly affected by the ITC's interpretation. Plaintiffs also note that the application of the cumulation statute in the context of a "final" injury determination presents a question of first impression for this Court.

In addition, plaintiffs contend that the ITC's interpretation of the cumulation statute is inconsistent with the international General Agreement on Tariffs and Trade (GATT) Antidumping and Subsidy Codes, to which the United States adheres. *See* 19 U.S.C. § 2503(a), (c)(6). Finally, plaintiffs contend that the ITC's determination "raises an issue of the constitutionality of an Act of Congress, as interpreted by the Commission." Specifically, plaintiffs contend that (1) under the ITC's interpretation of the cumulation statute, the provisions of the antidumping statute become unintelligible and vague; (2) the cumulation statute allows discrimination against imports of a particular country with no rational relation to the statutory purpose; and (3) the ITC's interpretation of the cumulation statute interferes with the President's constitutional authority to conduct foreign affairs.

Defendant opposes the motion which requests the assignment of this action to a three-judge panel. Defendant maintains that the issue of an individual country's causation, within the meaning of the cumulation statute, is not a sufficient reason to assign this case to a three-judge panel. Defendant also contends that, if after consideration of the merits, a single-judge court reverses the ITC's determination that the imports from Brazil compete with imports from Korea and Taiwan, the issue of the ITC's final determination would be rendered moot. Hence, the defendant submits that the granting of plaintiffs' motion "may result in an unnecessarily wasteful application of judicial resources."

Defendant stresses that this court has acted through a single judge in previous judicial review of the cumulation statute. Furthermore, issues of first impression, or those that involve possible conflicts with the GATT, "routinely" have been assigned for determination to a single-judge court. *See, e.g., Bingham & Taylor v. United States,* 10 CIT ——, 627 F.Supp. 793 (1986); *United States Steel Corp. v. United States,* 9 CIT ——, 618 F.Supp. 496 (1985). Finally, defendant characterizes the constitutional issue which plaintiffs raise as "no more than a claim that the ITC's interpretation of an act of Congress is erroneous." This issue, defendant asserts, is "routinely" decided by a single-judge court, and does not warrant assignment to a three-judge panel. *See, e.g., Mast Industries, Inc. v. Regan,* 8 CIT 214, 596 F.Supp. 1567 (1984).

The authority of the chief judge to designate a three-judge panel of the Court to hear and determine a case is found in Title 28 U.S.C. §§ 253(c), 255(a) (1982).

Section 253(c) of Title 28 provides:

The chief judge, under rules of the court, may designate any judge or judges of the court to try any case, and when the circumstances so warrant, reassign the case to another judge or judges.

28 U.S.C. § 253(c).

Section 255 provides:

(a) Upon application of any party to a civil action or upon his own initiative, the chief judge of the Court of International Trade shall designate any three judges of the court to hear and determine any civil action which the chief judge finds:

(1) raises an issue of the constitutionality of an Act of Congress, a proclamation of the President or an Executive order; or

(2) has broad or significant implications in the administration or interpretation of the customs laws.

(b) A majority of the three judges designated may hear and determine the civil action and all questions pending therein.

28 U.S.C. § 255(a), (b) (1982).

■ It is well established that the decision to designate a three-judge panel lies

within the sound discretion of the chief judge. *See, e.g., Barnhart v. United States*, 5 CIT 201, 204–205, 563 F.Supp. 1387, 1390 (1983); *Farr Man & Co. v. United States*, 1 CIT 104, 106 (1980); *see also SCM Corp. v. United States*, 79 Cust.Ct. 163, 166, CRD 77–6, 435 F.Supp. 1224, 1227 (1977). In exercising this discretion, the chief judge must find that the issues presented satisfy either of the two statutory criterion set forth in section 255(a). *See* 28 U.S.C. § 255(a)(1), (2). The chief judge must also consider whether the benefits and advantages of a decision by a three-judge panel outweigh the benefits derived from the "more efficient utilization of judicial resources" provided by a single judge. H.R.Rep. No. 1067, 91st Cong., 2d Sess., *reprinted in* 1970 U.S. Code Cong. & Admin. News 3188, 3200.

■ Congress, in the Customs Court Act of 1970, determined that, in all cases, except as provided in section 255, the judicial power of the court "shall be exercised by a single judge." *See* 28 U.S.C. § 254. The legislative purposes for granting this authority to a single judge were "to permit more efficient utilization of judicial manpower," and to "speed up the final resolution" of disputes. H.R.Rep. No. 1067, 91st Cong., 2d Sess., *reprinted in* 1970 U.S. Code Cong. & Admin.News at 3200. Section 255 authorizes the chief judge, in exceptional cases, to designate or convene a three-judge panel. *See* 28 U.S.C. §§ 254, 255(a). The legislative history of sections 254 and 255 makes clear the intent of Congress to conserve judicial resources, and reduce procedural delays by limiting three-judge panels to specified, exceptional situations which raise important issues that would warrant a collegial and broader judicial consideration. *See National Corn Growers Ass'n v. Baker*, 10 CIT ——, 643 F.Supp. 626, 630 (1986); H.R.Rep. No. 1067, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News 3188, 3200–01. As explained in the legislative history, the purpose of the authority conferred upon the chief judge in section 255(a) "is to permit broader representation of the court in deciding landmark or other important issues." H.R.Rep. No. 1067,

91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin. News at 3201. The statute and its legislative history leave no doubt that the convening of a three-judge panel should be based upon significant questions of law, and that questions of fact, regardless of their complexity or importance, would not justify the designation of a three-judge panel to hear and determine the case.

An important congressional objective of the Customs Courts Act of 1980 was to provide greater uniformity and consistency in the interpretation and application of the nation's international trade laws. *See, e.g.,* H.R.Rep. No. 1235, 96th Cong., 2d Sess. 20, *reprinted in* 1980 U.S. Code Cong. & Admin. News 3729, 3731. In order to achieve this objective, Congress sought to eliminate jurisdictional conflicts and to expand the opportunities for judicial review. In addition, Congress reaffirmed the 1970 statutory direction for the assignment of cases to a single judge, except in those instances which raise important constitutional issues, or which have a broad or significant impact in the administration of the customs laws. *See* 28 U.S.C. §§ 254, 255 (1982). Hence, the authority conferred upon the chief judge in section 255 embodies the congressional policy determination that a decision rendered by a three-judge panel contributes to the uniform interpretation and application of the nation's international trade laws.

One may ask how the decision of a three-judge panel would better promote the congressional goals of uniformity and consistency. Several factors contribute to the answer to this important question. It may be stated at the outset that consideration by a three-judge panel fosters "a fuller judicial consideration of the case." *National Corn Growers Ass'n v. Baker*, 10 CIT ——, 643 F.Supp. 626, 630 (1986). A "fuller" judicial consideration follows the collegial discussion made possible by a three-judge panel. The synergistic effect of this more thorough, judicial consideration would also promote the national policy of uniformity set forth in Article I, Section 8, of the United States Constitution, which mandates that

"all Duties, Imposts and Excises shall be uniform throughout the United States." U.S. Const. Art. I, § 8; *see* Re, *Litigation Before the United States Court of International Trade,* 19 U.S.C.A. at vii (West Supp.1986). As stated in the *National Corn Growers* case, the "appointment of a three-judge panel ensures that the decision reached will reflect an institutional consensus, and thereby serves to further the statutory and constitutional mandate of uniformity of the international trade laws." *National Corn Growers,* 643 F.Supp. at 630–31.

It is also pertinent to recall that, in addition to settling the controversy between the parties, the judicial decision has precedential value. *National Corn Growers,* 643 F.Supp. at 631. Hence, since the consolidated view of a three-judge panel will reflect an institutional consensus, its decision is likely to be more acceptable and persuasive to individual judges of this Court as well as to judges of the Court of Appeals for the Federal Circuit who may be faced with a similar issue.

In this case, a significant legal question is the ITC's interpretation and application of the cumulation statute. Prior to enactment of the present statute, Congress, in the Trade Act of 1974, recognized that although cumulation was not required as a matter of law, it could be applied by the ITC on a case by case basis. *See* S.Rep. No. 1298, 93rd Cong., 2d Sess. 180 (1974), U.S.Code Cong. & Admin.News 1974, p. 7186. In 1979, Congress made substantial changes and revisions to the antidumping and countervailing duty statutes, but noted that ITC determinations of injury made pursuant to the 1974 Act were, on the whole, "consistent with the material injury criterion of [the 1979 Act.]" *See* S.Rep. No. 249, 96th Cong., 1st Sess. 87 (1979), U.S.Code Cong & Admin.News 1979, pp. 381, 473. The Trade and Tariff Act of 1984, however, amended the law to provide specific circumstances in which the ITC is required to cumulate imports before it determines the existence of material injury or threat of material injury to a domestic industry. *See* 19 U.S.C. § 1677(7)(C). This change was intended to eliminate inconsist-

encies in the interpretation and application of the law, and to insure that the injury test adequately addressed simultaneous unfair imports. *See* H.R.Rep. No. 725, 98th Cong., 2d Sess. at 36–37, U.S.Code Cong. & Admin.News 1984, p. 4910.

■ In support of its motion for assignment to a three-judge panel, plaintiffs refer to the increasing number of antidumping and countervailing duty investigations from two or more countries. In addition, plaintiffs assert that "this is a case of first impression which will affect how innumerable antidumping proceedings are conducted." In the *National Corn Growers* case, it was noted that the assertion of "questions of first impression, without more, would not necessarily warrant consideration by a three-judge panel." *National Corn Growers Ass'n v. Baker,* 10 CIT ——, 643 F.Supp. 626, 631 (1986). Indeed, it has been stated that cases of novel or first impression are "almost commonplace," and are usually decided by a single-judge court. However, if there are "special factors or exceptional circumstances," and other broad or significant implications in the administration or interpretation of the customs laws, designation of a three-judge panel will further the constitutional and congressional purposes set forth in section 255(a). *See Barnhart v. United States,* 5 CIT 201, 206, 563 F.Supp. 1387, 1391 (1983); *United States v. Accurate Mould Co.,* 3 CIT 155, 157 (1982); H.R.Rep. No. 1067, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News at 3201.

■ To date, no judicial decision has reviewed the ITC's interpretation and application of the cumulation statute in the context of a final injury determination. If a three-judge panel of this court were to determine the proper scope and application of the cumulation statute, that decision would contribute significantly to a uniform interpretation of the nation's antidumping law. In view of the increasingly large number of antidumping and countervailing duty investigations which involve imports of merchandise from two or more coun-

tries, the decision in this case will have "broad or significant implications in the administration or interpretation of the customs laws." Therefore, the chief judge finds that the scope and application of the cumulation statute raises sufficiently significant questions of law within the meaning of section 255(a) to warrant the designation of a three-judge panel of this Court to hear and determine the case.

Additional issues of major importance are raised by the possible conflict of the ITC's interpretation of the cumulation statute with the GATT Antidumping and Subsidy Codes. In view of the specifically stated intention of Congress that the United States comply with the provisions of the GATT Codes, this possibility assumes special significance. *See* Trade Agreements Act of 1979, § 2, 19 U.S.C. § 2503 (1982); *see also* S.Rep. No. 249, 96th Cong., 1st Sess. 36 n. 18, *reprinted in* 1979 U.S.Code Cong. & Admin.News 381, 423.

In 1984, when Congress enacted the Trade and Tariff Act, it reaffirmed its intention to maintain the consistency of United States laws with the GATT Antidumping and Subsidy Codes. The 1984 Act contained the cumulation statute as an amendment to the antidumping and countervailing duty laws. H.R.Rep. No. 725, 98th Cong., 2d Sess. 1, 37, *reprinted in* 1984 U.S.Code Cong. & Admin.News 5127, 5164. An interpretation and application of the statute which would conflict with the GATT Codes would clearly violate the intent of Congress. This possibility presents an issue that has broad and significant implications in the administration of the international trade laws. Hence, together with the other issues presented, the totality of the issues raised justify the discretion of the chief judge to designate a three-judge panel to hear and determine this case. *See Barnhart,* 5 CIT at 206, 563 F.Supp. at 1291 (citing *Farr Man & Co. v. United States,* 1 CIT 104 (1980)).

Finally, it should be noted that defendant is incorrect when it asserts that "plaintiffs' motion to sever a portion of this case for review by a three-judge panel raises the distinct possibility that the panel will issue what will be, essentially, an advisory opin-ion." Plaintiffs have not moved to "sever a portion" of the case; instead, plaintiffs have requested a three-judge panel to hear and determine the action. By statute, when a civil action is assigned to a three-judge panel, "a majority of the three judges designated may hear and determine the civil action *and all questions pending therein.*" 28 U.S.C. § 255(b) (emphasis added). Thus, the objection that the decision of the three-judge panel would be a mere advisory opinion is without merit.

For the reasons stated, the chief judge finds that the ITC's interpretation and application of the cumulation statute, together with the other questions presented, raise issues of "broad or significant implications in the administration or interpretation of the law." 28 U.S.C. § 255(a) (1982). In view of this finding, it is unnecessary to determine whether plaintiffs' constitutional objections, standing alone, would warrant assignment of this case to a three-judge panel.

Accordingly, plaintiffs' motion that the chief judge designate three judges of the court to hear and determine this action is granted.

It is ORDERED that the following judges of this court serve as members of a three-judge panel:

1. Judge James L. Watson,

2. Judge Dominick L. DiCarlo, and

3. Judge Nicholas Tsoucalas.

Pursuant to 28 U.S.C. § 255(b), the above-named panel of judges of this court shall hear and determine all questions presented in this action. Nothing in this opinion should be interpreted as expressing any view as to the merits of this litigation.