Slip Op. 01-40

# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: CARMAN, CHIEF JUDGE

|  |  |  |
|---|---|---|
| SONY ELECTRONICS INC., | : | |
| Plaintiff, | : | |
| v. | : | Court No. 98-07-02438 |
| UNITED STATES, | : | |
| Defendant. | : | |

|  |  |  |
|---|---|---|
| ARBON STEEL & SERVICE CO., INC., | : | |
| Plaintiff, | : | |
| v. | : | Court No. 98-10-02987 |
| UNITED STATES, | : | |
| Defendant. | : | |

[Plaintiffs' combined motion for reassignment of the instant actions to a Three-Judge Panel is denied.]

Dated: April 5, 2001

*Galvin & Mlawski* (*John J. Galvin*), New York, New York, for Plaintiffs.

*Stuart E. Schiffer*, Acting Assistant Attorney General; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Jeanne E. Davidson*, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Todd M. Hughes*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Jeffrey A. Belkin*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, *Richard McManus*, Attorney, Office of General Counsel, United States Customs Service, of Counsel, Washington, D.C., for Defendant.

**OPINION**

**CARMAN, CHIEF JUDGE:**  This matter arises from the combined motion of Plaintiffs Sony Electronics Inc. ("Sony") and Arbon Steel & Service Co., Inc. ("Arbon") for an order reassigning this action to a three-judge panel pursuant to 28 U.S.C. §§ 253(c) and 255(a) (1994) and Rule 77(e)(2) of the Rules of this Court.  Defendant, United States, opposes the motion.

Plaintiffs both seek refunds of the Harbor Maintenance Tax ("HMT") paid on their respective vessel cargo exports.  However, the two cases come before the Court under different jurisdictional bases.  On October 23, 1995, Sony protested Customs' refusal to refund the HMT imposed under 26 U.S.C. § 4461(c)(1)(B) on its vessel cargo exports for the 2nd, 3rd and 4th quarters of 1990 and the 1st and 4th quarters of 1991 and 1992, inclusive.  Pursuant to 19 U.S.C. § 1515(b) and 19 C.F.R. § 174.22(d), Sony's protest was deemed denied on January 4, 1998.  The instant action was timely filed with this Court on June 29, 1998.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a).  *See Swisher Int'l, Inc. v. United States*, 205 F.3d 1358, 1364 (Fed. Cir. 2000) (holding that HMT plaintiffs may bring an action under 1581(a)).

Arbon commenced its action with the filing of a summons and complaint on October 9, 1998.  Arbon's action involves a demand for refund of the HMT paid on its vessel cargo exports for the 4th quarter of 1995 through the 3rd quarter of 1997, inclusive.  Arbon subsequently abandoned its claim for refund of its HMT export payment for the 1st quarter of 1997.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(i).  *See United States v. United States Shoe Corp.* ("*U.S. Shoe*"), 523 U.S. 360, 366 (1998) (finding that CIT jurisdiction over controversies regarding the administration and enforcement of the HMT properly resides with §

1581(i)(4)).

In *U.S. Shoe*, a unanimous Supreme Court held the HMT, as applied to exports, unconstitutionally violated the Export Clause. 523 U.S. at 369. Pursuant to the Supreme Court's decision, Plaintiffs are entitled to a full refund of all HMT imposed under 26 U.S.C.§ 4461(c)(1)(B) on their respective vessel cargo exports. Plaintiffs submit, however, that the United States is also required to pay prejudgment interest on the total amount of refunds due. Plaintiffs base their request for a three-judge panel on the grounds that the Government's refusal to pay prejudgment interest on the HMT refunds due violates several provisions of the United States Constitution.

Defendant opposes the motion, urging Plaintiffs have made no showing to justify appointment of a three-judge panel. Defendant contends Plaintiffs' motion neither raises important constitutional issues, nor is its resolution likely to have broad or significant implications in the administration or interpretation of the customs laws.

DISCUSSION

The authority of the chief judge of this Court to designate a three-judge panel to hear and determine a case is granted under 28 U.S.C. §§ 253(c) and 255(a).

Section 253(c) of Title 28 provides:

> The chief judge, under rules of the court, may designate any judge or judges of the court to try any case and, when the circumstances so warrant, reassign the case to another judge or judges.

28 U.S.C. § 253(c).

Section 255(a) of Title 28 provides in pertinent part:

> (a) Upon application of any party to a civil action, or upon his own initiative, the chief judge of the Court of International Trade shall designate any three judges of

the court to hear and determine any civil action which the chief judge finds: (1) raises an issue of the constitutionality of an Act of Congress, . . . or (2) has broad or significant implications in the administration or interpretation of the customs laws.

28 U.S.C. § 255(a).

Rule 77(e)(2) of the Rules of this Court implement these statutory provisions in pertinent

part:

(2) Assignment to Three-Judge Panel. An action may be assigned by the chief judge to a three-judge panel either upon motion, or upon the chief judge's own initiative, when the chief judge finds that the action raises an issue of the constitutionality of an Act of Congress, . . . or has broad or significant implications in the administration or interpretation of the law.

USCIT Rule 77(e)(2).

Title 28 U.S.C. § 255, however, does not obligate the chief judge to assign a three-judge

panel. Rather, decisions concerning the appointment of a three-judge panel fall within the sound

discretion of the chief judge. *See Cemex, S.A. v. United States*, 765 F. Supp. 745, 748 (Ct. Int'l

Trade 1991); *Fundicao Tupy, S.A. v. United States*, 652 F. Supp. 1538, 1540-41 (Ct. Int'l Trade

1987); *Metallverken Nederland B.V. v. United States*, 1989 WL 113686 (Ct. Int'l Trade Sept. 26,

1989), *quoting Seattle Marine Fishing Supply Co. v. United States*, 709 F. Supp. 226, 228 (Ct.

Int'l Trade 1989). In exercising this discretion, the chief judge must find that the issues

presented satisfy either of the two statutory criterion set forth in 28 U.S.C. § 255(a). *Cemex*, 765

F. Supp. at 748; *Washington Int'l Ins. Co. v. United States*, 659 F. Supp. 235, 236 (Ct. Int'l Trade

1987) (citing *Fundicao*, 652 F. Supp. at 1541). In addition, the plaintiff must demonstrate "facts

which would warrant a finding that the action presents a question of such an exceptional nature

as to require the designation of a three-judge panel." *Barnhart v. United States*, 563 F. Supp.

1387, 1390 (Ct. Int'l Trade 1983). Finally, the legislative history of 28 U.S.C. § 255 makes clear

that the chief judge must also "consider whether the benefits and advantages of a decision by a

three-judge panel outweigh the benefits derived from the 'more efficient utilization of judicial resources' provided by a single judge." *Fundicao*, 652 F. Supp. at 1541, *quoting* H.R.REP. NO. 1067, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.C.C.A.N. 3188, 3200.

Initially, the Court notes Plaintiffs never address the statutory criteria of § 255(a) granting the chief judge the authority to assign the cases to a three-judge panel.  Nowhere do they demonstrate how their claims meet this statutory standard, instead leaving it to the Court to formulate their arguments for them.  Despite Plaintiffs' failure to address the criteria, Plaintiffs' arguments appear tailored to § 255(a)(1), which requires that the action raise an issue of the constitutionality of an Act of Congress.

The United States has refused to pay prejudgment interest in the HMT cases based on the traditional rule enunciated in *Library of Congress v. Shaw*, 478 U.S. 310, 314 (1986), where the Supreme Court held that "[i]n the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award."  Plaintiffs allege that several "constitutional requirements" embodied in the Fifth and Tenth Amendments, as well as the Export Clause, preclude application of the "traditional rule" of sovereign immunity from prejudgment interest.  Plaintiffs make four alternative claims regarding their position that the Government is precluded from claiming sovereign immunity.

First, citing *North Am. Co. v. SEC*, 327 U.S. 686, 704-5 (1946), Plaintiffs claim the Federal Government is not an absolute sovereign.  Plaintiffs contend that when the Export Clause and Import-Export Clause are read in conjunction with the Tenth Amendment, it is clear that the power to tax exports is reserved to the people of the United States.  Therefore, the Government exercised a power that was not within its sovereign authority when it taxed exports under the HMT.  Accordingly, Plaintiffs argue that because the Government was not acting within its

sovereign power when it taxed the exports, it cannot now claim to have sovereign immunity from prejudgment interest liability.

Second, Plaintiffs contend that even if their first argument fails, the "constitutional requirement" of just compensation embodied in the Takings Clause of the Fifth Amendment precludes application of the traditional rule regarding immunity from interest.

Third, Plaintiffs argue that should the Takings Clause be inapplicable to the present case, the Due Process Clause of the Fifth Amendment precludes the Government from claiming immunity from interest payments because the taxes paid on the exports constitute a deprivation of property that requires just compensation.

Finally, Plaintiffs submit that the interest earned in the Harbor Maintenance Trust Fund on the HMTs at issue is property, just as the taxes themselves are property. Plaintiff cites the Supreme Court's decision in *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, for the proposition that the "earnings of a fund are incidents of ownership . . . and are property just as the fund itself is property." 449 U.S. 155, 164 (1980). Thus, the Government's retention of the earnings realized on the HMT are an attempt to raise federal revenue from exports and, although not directly imposed on the goods being exported, are, in effect, a prohibited tax on exports.

Defendant contends Plaintiffs' motion does not challenge the constitutionality of an Act of Congress, but merely involves general constitutional challenges to the United States' refusal to pay interest. Defendant contends Plaintiffs' failure to directly address the constitutionality of an Act of Congress mandates denial of the motion. Additionally, Defendant argues that even if Plaintiffs had sufficiently challenged the constitutionality of an Act of Congress, Plaintiffs fail to demonstrate that the benefits of a three-judge panel would outweigh the more efficient use of judicial resources provided by a single judge.

For the reasons set forth below, the Court agrees with Defendant.

A. *Constitutionality of an Act of Congress - 28 U.S.C. § 255(a)(1)*

The Court finds Plaintiffs have failed to demonstrate how the Government's refusal to pay prejudgment interest on the HMT refunds directly addresses the "constitutionality of an Act of Congress" as required by 28 U.S.C. § 255(a)(1). No statutes are being challenged as unconstitutional in this case. Rather, Plaintiffs simply contend that denial of interest would violate several provisions of the Constitution. As this Court has stated, "[a]llegations of unconstitutionality, in and of themselves, are insufficient to bring an action within the confines of the section 255 exception to the single-judge trial standard." *Barnhart*, 563 F. Supp. at 1391 (citing *Erie Navigation Co. v. United States*, 475 F. Supp. 160 (Cust. Ct. 1979)). The party seeking the three-judge panel bears the burden of establishing facts which would warrant a finding that the action presents a question of such an *exceptional* nature as to require the designation of a three-judge court. *Id*. at 1390 (emphasis added). Plaintiffs have not satisfied that burden.

Even were the Court convinced that the constitutionality of an Act of Congress were at issue, the fact that the issue of prejudgment interest has been raised in a prior test case supports the Court's determination to deny Plaintiffs' motion. *See International Business Machines Corp.* ("*IBM*") *v. United States*, 201 F.3d 1367 (Fed. Cir. 2000). A short history of the relevant proceedings relating to prejudgment interest in the HMT cases is helpful in demonstrating that Plaintiffs' arguments are unpersuasive and fail to show these issues are of an exceptional nature.

After the Supreme Court decided *U.S. Shoe*, all parties involved in HMT litigation had an opportunity to submit briefs concerning the procedures necessary to implement the refunds of the

HMT exacted on exports. After considering all recommendations, on May 20, 1998, the Court issued an order directing that "the United States shall select an appropriate case for the entry of judgment with interest, shall notify plaintiff in that case, and shall submit a proposed judgment form to the court by" June 1. *United States Shoe Corp. v. United States*, 1998 WL 272982, at *1 (Ct. Int'l Trade May 20, 1998). *IBM v. United States*, Court No. 94-10-00625, was subsequently designated as the test case for the award of interest in § 1581(i) cases. As noted earlier, Arbon is before this Court under § 1581(i) jurisdiction. On June 17, 1998 the Court entered judgment in *IBM* for the plaintiff, ordered payment of $330,689.00 in principal, and found that 28 U.S.C. ' 2411 entitled the HMT plaintiffs to interest. *See IBM v. United States*, 1998 WL 325156, at *1 (Ct. Int'l Trade June 17, 1998). The Court also stayed the payment obligation as to interest "until the time for appeal expires or the appeal is finally resolved." *Id.*

The United States filed its notice of appeal in *IBM* on August 7, 1998. During the time *IBM* was under review by the Court of Appeals for the Federal Circuit, this Court issued a proposed plan for the resolution of claims and outstanding issues. *See United States Shoe Corp. v. United States*, 1998 WL 419353 (Ct. Int'l Trade July 23, 1998). The Court specifically stated that "[i]f there remain any non-export issues for which a test case is not now proceeding, a plaintiff who wishes its case to proceed as a test case on such issue shall so advise the court in its comments on the proposed plan by August 14, 1998." *Id.* at *2. In the proposed judgment, the Court indicated that "[i]nterest shall be paid on the refunded amounts in accordance with a schedule set by the court should appellate proceedings in [*IBM*] finally resolve that interest is owing on HMT payments." *Id.* at *4. The Court also solicited comments from interested parties on the Court's proposal. No party suggested that another test case be designated regarding alleged constitutional bases for an award of interest. The only additional interest issue identified

was how the award of interest, if upheld on appeal, would be calculated pursuant to the Internal Revenue Code. (Unrebutted assertion set forth in United States' Response Brief at 6.)

On August 28, 1998, after considering the interested parties' proposals, the Court issued its Order Establishing Claims Resolution Procedure. *See United States Shoe Corp. v. United States*, 1998 WL 544680 (Ct. Int'l Trade Aug. 28, 1998). The Court stated:

> "[n]o other HMT test cases will be designated unless a request is received by the court within 15 days hereof for designation of a specific case on an issue not covered by a previously designated test case. The court expects attorneys familiar with this matter to raise all issues of general applicability which relate to HMT and which reasonably can be anticipated."

*Id*. at \*2. The Court's proposed judgment, identifying *IBM* as the interest test case, remained unchanged. No issue relating to constitutional claims of prejudgment interest was identified within the fifteen days provided by the Court. (Unrebutted assertion set forth in United States' Response Brief at 7.)

On January 19, 2000, the Federal Circuit reversed this Court's award of interest in *IBM*. 201 F.3d 1367. Subsequently, IBM filed a combined petition for rehearing and rehearing *en banc*, in which IBM first raised its constitutional arguments at the appellate level. The Federal Circuit denied IBM's petition on June 13, 2000. IBM then filed a petition for a writ of certiorari in the United States Supreme Court on September 28, 2000. The Supreme Court denied the petition on February 20, 2001. It is true that the constitutional issues were not addressed by the Federal Circuit in *IBM*. However, the issues were fully briefed before this Court. Additionally, the Federal Circuit denied the petition for rehearing in which the constitutional issues were raised. The Court finds it highly persuasive that the Federal Circuit denied the petition for rehearing and that the Supreme Court denied the petition for a writ of certiorari.

With respect to cases claiming jurisdiction under 28 U.S.C. § 1581(a) (i.e. Sony), in

*Swisher Int'l, Inc. v. United States*, the Federal Circuit reversed this Court, holding that the Supreme Court's decision in *U.S. Shoe* did not preclude the Court from considering the cases of HMT plaintiffs brought under the auspices of 1581(a) jurisdiction where a refund request and protest were, in turn, filed and denied. 205 F.3d at 1364. On March 13, 2001, upon remand, the Court issued an order requiring the immediate refund of HMT on exports, plus interest pursuant to 28 U.S.C. § 2644 for *Swisher*-type cases. *See Swisher Int'l, Inc. v. United States*, 2001 WL 261562, at *1 (Ct. Int'l Trade Mar. 13, 2001). The order also designates *Swisher Int'l, Inc. v. United States*, Court No. 95-03-00322, as a test case to adjudicate the issue of whether pre-summons interest accrues on HMT refunds in *Swisher*-type cases. *See id.*, at *3.

Because the interest issue has already been litigated with respect to § 1581(i) cases in *IBM*, and *Swisher* has been designated a test case for interest in § 1581(a) cases, the chief judge finds the issues presented by Plaintiffs' cases are not of an exceptional nature. This, coupled with Plaintiffs' failure to raise an issue of the constitutionality of an Act of Congress leads the chief judge to conclude Plaintiffs do not meet the burden of proof required to reassign these cases under the first prong of § 255(a).

*B. Broad or Significant Implications – 28 U.S.C. § 255(a)(2)*

Plaintiffs do not allege that the requirements of the second prong of § 255(a) have been met. Nonetheless, the Court is required to consider the second prong in its analysis. The Court finds Plaintiffs arguments fail under § 255(a)(2) for the same reasons as addressed *supra*, Section A. Plaintiffs have not demonstrated that this case has broad or significant implications in the administration or interpretation of the customs laws as required by 28 U.S.C. § 255(a)(2).

*C.  Benefits of Three-Judge Panel vs. Efficient Use of Judicial Resources*

In addition to the two statutory criteria of § 255(a), the chief judge is required to determine whether the benefits and advantages of a three-judge panel outweigh the benefits derived from the more efficient utilization of judicial resources provided by a single judge. *Fundicao*, 652 F. Supp. at 1541.

By order of assignment dated December 5, 1995, all cases filed with the Court of International Trade subsequent to the order in which the constitutionality of the HMT was challenged were to be assigned to the Honorable Jane A. Restani, Judge.  The two present cases fall into this category and were assigned to Judge Restani immediately upon filing.  In *National Corn Growers Ass'n v. Baker*, 643 F. Supp. 626 (1986), the chief judge noted that:

> [F]or reasons of judicial economy and efficiency, the authority to reassign should be used sparingly.  Indeed, it may be stated that motions for reassignment to a three-judge panel, made after the case has been assigned to a single judge, will be viewed with disfavor . . . .

643 F. Supp. at 631.

Judge Restani has been involved in the large quantity of litigation surrounding the challenges to the constitutionality of the HMT as applied to exports since its commencement in 1994.  She was a member of the three-judge panel declaring the HMT unconstitutional as applied to exports, which decision was subsequently affirmed by the Federal Circuit and the Supreme Court.  She also was involved in the challenges to the Government's refusal to pay interest in *IBM*, and is currently involved in the process to designate *Swisher* as the interest test case under § 1581(a).  Judge Restani is intimately familiar with the complex procedural history of the HMT litigation.  Plaintiffs have not shown the Court that reassigning these cases to a three-judge panel would provide benefits or advantages that clearly "outweigh the benefits derived from the 'more efficient utilization of judicial resources provided' by a single judge", in this case, Judge Restani. *Fundicao*, 652 F. Supp. at 1541 (quoting H.R.REP. NO. 1067, 91st Cong., 2d Sess., *reprinted in*

1970 U.S.C.C.A.N. 3188, 3200).

CONCLUSION

On the facts presented, without expressing any view as to the merits of the litigation, it is the conclusion of the chief judge that this action neither raises an issue of the constitutionality of an Act of Congress, nor has broad or significant implications in the administration or interpretation of the customs law within the meaning of 28 U.S.C. § 255(a) to warrant reassignment to a three-judge panel. Further, the chief judge finds that the benefits and advantages of the designation of a three-judge panel do not outweigh the benefits derived from the more efficient utilization of judicial resources provided by a single judge.

_____
Gregory W. Carman,
Chief Judge

Dated: April 5, 2001
        New York, New York