202

EURASIA IMPORT Co., INC. *v.* UNITED STATES (No. 4448)[1]

United States Court of Customs and Patent Appeals, April 4, 1944

*James W. Bevans* for appellant.
*Paul P. Rao*, Assistant Attorney General (*Sybil Phillips* and *Richard F. Weeks*, special attorneys, of counsel), for the United States.

[Oral argument December 8, 1943, by Mr. Bevans and Mr. Weeks]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

GARRETT, Presiding Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division, dismissing the protest of appellant whereby it sought refund of a portion of the duties assessed and collected at the port of New York on certain wool felt hat bodies.

It appears from the consular invoice that the merchandise was consigned to a concern known as "Aargol Import Corp." Whether or not the consignee was a corporation does not appear, except as it may be surmised from the word "Corp." appearing in its name. The merchandise (consisting of 23 bales) apparently was entered by the consignee as warehouse entry 36153 in June 1936. It appears that the Chase National Bank held the papers, under some arrangement or interest not disclosed, and that on December 24, 1936, appellant purchased the merchandise in the warehouse, and received from the bank a blanket withdrawal permit (signed by Aargol Import Corp.) made out on customs Form 7505, in connection with the warehouse entry, the form being that which is required by the Collector of Customs when a transfer of goods in warehouse is made from an original importer to another party.

Appellant made withdrawals for consumption on different dates (9 bales on March 25, 1937, and one lot of 12 bales and one of two bales on September 13, 1937) and paid estimated duties at the rate of 55

per centum ad valorem and 40 cents per pound, based on the collector's classification of the merchandise under paragraph 1115 (b) of the Tariff Act of 1930. There was no final liquidation by the collector, however, until September 27, 1940.

In the meantime, specifically on November 22, 1937, this court had held in the case of *Cohn & Lewis* v. *United States*, 25 C. C. P. A. (Customs) 220, T. D. 49335, that merchandise similar in character to that here involved was properly classifiable under paragraph 1115 (a) of the Tariff Act of 1930, and dutiable at 45 per centum ad valorem and 33 cents per pound. So (we assume because of that decision), the collector liquidated the entry here involved on that basis, as a result of which there was left an excess of $212.67 of the estimated deposited duties, which amount was subject to be refunded.

It was and is the contention of appellant that as transferee of the merchandise it is entitled to receive the refund by reason of the provisions of section 22 (b) of the Customs Administrative Act of 1938, which was enacted after the withdrawals but before the liquidation, and under date of September 13, 1940, evidently in anticipation of the expected liquidation, it addressed a letter to the collector advising him that it was the transferee and requesting payment to it of any refund found to be due. We quote the following paragraph from the letter, a copy of which was introduced in evidence as Exhibit 8:

We respectfully desire to bring to your attention the fact that we are the transferee of a portion of this importation, within the meaning of Section 557 of the Tariff Act of 1930, and that we are entitled to a share of the refund applicable to that portion of this importation which had been transferred to us. Our claim to such refund is based upon the provisions of Section 22 (b) of the Customs Administrative Act of 1938.

Section 22 (b) (which was new statutory law, adopted as an amendment to section 557 of the Tariff Act of 1930 which provided for warehouse entry of dutiable merchandise) reads as follows:

(b) The right to withdraw any merchandise entered in accordance with subsection (a) of this section for the purposes specified in such subsection may be transferred upon compliance with regulations prescribed by the Secretary of the Treasury. So long as any such transfer remains unrevoked the transferee shall have, with respect to the merchandise the subject of the transfer, all rights to file protests, and to the privileges provided for in this section and in sections 562 and 563 of this Act which would otherwise be possessed by the transferor. The transferee shall also have the right to receive all lawful refunds of moneys paid by him to the United States with respect to the merchandise and no revocation of any transfer shall deprive him of this right. Any such transfer may be made irrevocable by the filing of a bond of the transferee in such amount and with such conditions as the Secretary of the Treasury shall prescribe, including an obligation to pay all unpaid regular, increased, and additional duties, charges, and exactions on the merchandise the subject of the transfer. Upon the filing of such bond the transferor shall be relieved from liability for the payment of duties, charges, and exactions on the merchandise the subject of the transfer, but shall remain bound by all other unsatisfied conditions of his bond.

(b) On and after the effective date of this Act, this section shall be effective with respect to merchandise entered for warehouse prior to, as well as after, such date.

The Customs Administrative Act was enacted June 25, 1938, and provided that it should become effective (except as to two sections not involved here) "on the thirtieth day following the date of its enactment."

It will be observed that the date of its enactment was several months subsequent to the withdrawals (the last on September 13, 1937) of the merchandise and the payment of the estimated duties by appellant, and the collector in a letter dated September 16, 1940 (introduced in evidence as Exhibit 1), stated to appellant, *inter alia:*

As the records of this office indicate that you became transferee and paid duty on the transferred merchandise prior to the effective date of the Customs Administrative Act of 1938 and as the cited section is not construed to be retroactive, this office can recognize only the importer of record in paying out refunds. Therefore, the refund check will of necessity be drawn to the order of Aargol Import Corp.

There also appears of record a letter (Exhibit 2) addressed by the collector to appellant under date of October 28, 1940, the body of which reads:

Reference is made to your letter of September 27, 1940 [appellant's letter so referred to is not in evidence], in which you request that we withhold payment of the refunds in connection with six entries covering wool hat bodies imported by the Aargol Import Corporation. You appear to be the transferee of a part of the merchandise covered by these entries. Your request is based on your intention to protest our letter of September 16, 1940, in which we informed you that we would be unable to have a refund check drawn to your order, in connection with Warehouse Entry No. 38789 of July 9, 1936, covering a similar importation by the Aargol Import Corporation and a similar transfer of a part of the merchandise to you, because the transfer was consummated prior to the effective date of the Customs Administrative Act of 1938.

Your letter of September 27, 1940 was referred to the Bureau of Customs and we are in receipt of a communication from that office instructing us to pay the refunds in question to the original importer, in view of the fact that section 22 (b) of the Customs Administrative Act of 1938 is not retroactive.

Following the above correspondence appellant, apparently on November 6, 1940, filed its protest which reads:

Protest is hereby made against your refusal to refund to us the excess duties you have illegally assessed and collected from us in connection with merchandise we have withdrawn from bonded warehouse under transfers made to us by Aargol Import Corp. who imported such merchandise and entered same under the above entry number.

The reason for objection, under the Customs Administrative Act of 1938, Sec. 22 (b), is that we, as transferee, are entitled to receive the refund of any amount collected by you in excess of the legal amount of duty due you under the Tariff Act of 1930.

We deem it proper to state at this point that at the instance of counsel for the Government there was formally introduced in evidence,

as Exhibit 9, a paper taken from the jacket of the collector's official papers, entitled "Notice of Refund." It is designated "Customs Form 5269" and is dated October 2, 1940. It states the amount subject to refund as $212.67. It bears the notation "To Aargol Import Corp.," no address being given. There are certain printed notations evidently applicable to Internal Revenue taxes with which we are not here concerned. There is stamped on the document arranged in a rectangular space "Excessive Duties Nov 20 1940 Refunded." Above, but not on the line arranged for the collector's signature, the initials "E S" appear.

This is the only information obtainable from the record before us relative to the question of whether the refund was, in fact, paid to Aargol Import Corp. There is some evidence indicating that Aargol Import Corp. was not in business at the time of the liquidation, but the showing in this regard is not very definite. Article 1201 (d) of the Customs Regulations provides, in substance, that in case the *nominal* consignee has become bankrupt refunds of duties on merchandise entered in the name of such consignee for the account of the actual owner should be withheld from payment pending the receipt of claim therefor and establishment of right thereto, unless the declaration of the ultimate consignee or actual owner has been filed with the collector, under the provisions of section 485 of the tariff act. This, of course, requires some investigation on the part of the collector as to the status of a consignee before making refund.

Section 485 relates to the declaration by a nominal consignee who is not the actual owner of the imported merchandise, and it has no direct application here (since Aargol Import Corp. was not a nominal consignee within the meaning of the section), but it would seem to have been within the spirit of article 1201 (d) of the regulations for the collector to have ascertained the status of Aargol Import Corp. before tendering or making any refund to it.

It may be noted that if the excessive duties were, in fact, refunded to Aargol Import Corp. on November 20, 1940, as might be deduced from the notation stamped on Exhibit 9 above described, such refund was after the collector had been notified of appellant's claim, and after its protest had been filed.

Accompanying the protest when transmitted to the Customs Court there was a paper signed by the collector entitled "Memorandum Re: Protest 22116/40" which we here quote:

The attached document filed in this office and given the protest number above indicated is not, in our opinion, a protest within the meaning of Section 514 of the Tariff Act of 1930.

The "refusal to refund to us excess duties you have illegally assessed" is apparently our letter of October 28, 1940, to Eurasia Import Company, informing them of the ruling in letter of the Bureau of Customs dated October 17, 1940.

In *United States* v. *Andrews & Company*, 14 Court of Customs Appeals, 62 (T. D. 41576) the court held that a demand of the Collector upon the importer for duties 'was nothing more than a communication to the importer in the course of the administration of the business of the collector's office." Our letter of October 28 to the Eurasia Import Company, Inc., not even making a demand but merely advising them of the result of the Bureau ruling was even less an "exaction" or "refusal," and even more a mere "communication to the importer in the course of the administration of the business of the collector's office."

The protest was timely filed.

Because of the unusual character of the case, we have deemed it not improper to recite its history in considerable detail.

The motion made by the Government before the trial court to dismiss the protest was based upon two grounds, the first being, in effect, that the refusal of the collector to pay the refund to the appellant is not a protestable decision within the meaning of section 514 of the Tariff Act of 1930, and the second that section 22 of the Customs Administrative Act of 1938 was not retroactive so as to affect this transaction.

The trial court felt constrained to sustain the motion to dismiss the protest on the first ground, but took occasion to express, in effect, the view that the second ground should not be sustained. We quote from its decision the following:

The pleadings before us contain but one claim, viz, the refusal of the collector to recognize the plaintiff as one to whom refund of excess duties should be made. Under the statute conferring jurisdiction upon this court (section 514 of the Tariff Act of 1930) we are without authority to entertain such a claim, but we deem it proper to say that we consider a construction of section 557, *supra*, which results in nullifying the plain wording of the statute should be avoided. If would seem to the court that the intention of Congress is plainly expressed to subrogate the transferee to the position of the transferor in regard to the right to receive refunds. This view is strengthened by the additional provision in said section as amended, that the "section shall be effective with respect to merchandise entered for warehouse prior to, as well as after," the effective date of the amendatory act. However, the jurisdiction of this court is limited by statute and we can find no authority to decide the question here presented. Neither have we any power to render a declaratory judgment. We therefore find that the protest should be and the same is hereby dismissed.

We take it to be obvious from the record before us, the material parts of which have been recited, that from every equitable standpoint the appellant here was entitled to receive in some manner the excessive duties which it had paid as a part of the estimated duties when the withdrawals from warehouse were made. The Aargol Import Corp. doubtless executed a bond at the time it made the warehouse entry which remained in the custody of the collector, but inasmuch as the duties had been paid by its assignee there was no subsisting liability on the bond, so far as the merchandise sold to appellant was concerned, and since Aargol Import Corp. had paid nothing to the Government, the payment of anything to it created a most unreasonable anomaly.

It is difficult to understand why an administrative practice should have been developed from which such an anomaly could result. It was evidently developed solely as an administrative matter growing out of regulations promulgated by the Treasury Department.

It appears that prior to the adoption by Congress of the Customs Administrative Act of June 25, 1938, there was no express statutory provision for authorizing the transfer by the original importer of merchandise in warehouse, but under regulations promulgated by the Secretary of the Treasury such transfers were permitted. See article 332 Customs Regulations of 1937. It was provided, however (see article 317 (b)), that "Original importers are not by a subsequent transfer relieved from their liability to the Government * * *," and (by article 1201 (c)) that—

Refunds of such excessive duties shall be made by check drawn to the order of the importer of record, that is, the person in whose name the entry was made, or to the order of the actual owner when substituted for the importer of record in accordance with section 485 (d) of the tariff act. The person in whose name a rewarehouse entry is made may, for the purpose of making refunds, be considered the importer of record of the merchandise covered by the rewarehouse entry, provided he has filed a rewarehouse bond and the principal in the original warehouse entry bond does not, in advance of payment of the refund, file a written notice of an adverse claim. (See T. D. 45614.) The check covering the amount due, accompanied by the original notice of refund, shall be delivered or mailed together to the person entitled to receive the same, provided that, in the case of entries made at ports of entry other than headquarters ports, the check and notice shall first be sent to the deputy collector in charge at the port of entry for mailing after noting payment on the proper schedule.

It is a fair assumption that the customs authorities in making or offering to make, the refund in this case to Aargol Import Corp. and denying it to appellant were governed by the last quoted article of the regulations, taken, we suppose, in connection with article 317, providing that original importers are not by a subsequent transfer relieved from their liability upon the warehousing bond (a liability which was nonexistent in this case, since the collector already had the money).

We have no doubt that section 22 (b) of the Customs Administrative Act was intended to and did modify not only section 557 of the Tariff Act of 1930 but that it modified and, in part, supplanted certain of the regulations above referred to, particularly article 1201 (c), which apparently was applied under the theory that section 22 (b) was not retroactive in a manner affecting the situation existing in this case.

In its brief before us the Government states:

* * *. Section 22 of the Customs Administrative Act of 1938 altered the procedure which theretofore obtained with respect to refunds and provided that the refund is properly payable to the transferee. If Section 22 is applicable to the instant transaction, appellant is legally entitled to the refund. If not, the Collector properly made the refund check payable to the original importer.

The foregoing might be construed as a concession on the part of Government counsel that if section 22 (b) be held to be retroactive the appellant's protest here should be sustained, but in fairness to counsel it should be said that while the concession is that appellant would be· *legally entitled* to the refund, it is not conceded that recovery may be adjudged in this proceeding because it is contended that the refusal to make the refund to appellant does not present a protestable question within the meaning of section 514:

The new section (22 (b)), after specifically authorizing transfers of the kind made in this case, provides that "So long as any such transfer *remains unrevoked* the transferee shall have  *  *  *  *all rights* to file protests  *  *  * which would otherwise be possessed by the transferor." [Italics ours.] Also, it provides that "The transferee *shall also have the right to receive all lawful refunds* of moneys paid by him to the United States with respect to the merchandise and *no revocation* of any transfer shall deprive him of this right  *  *  *.*" [Italics ours.]

It may be remarked here that in clothing the transferee with the right of protest the statute obviously took that right away from the original importer so long as the transfer remained unrevoked, and if a transferee be entitled to the refund of duties paid by him, of which right no revocation may deprive him, the original importer (the transferor) is certainly excluded from receiving such refund even though the latter's bond originally executed at the time of the warehouse entry be still in the custody of the collector at the time of his final liquidation.

A further provision of section 22 (b) is that on and after the effective date of the act, the section shall be effective with respect to merchandise entered for warehouse *prior to*, as well as after, such date.

It is the contention of the Government, in substance, that inasmuch as the instant merchandise was not only entered prior to the effective date of the Customs Adminstrative Act, but was also withdrawn (the estimated duties being paid) and had entered the commerce of the United States prior to that date, the retroactive language does not apply in the instant case, and, in effect, that the date of liquidation is not a proper matter for consideration in construing the retroactive language.

We are unable to agree with the Government's contention in that regard. The transaction here involved was not completed until the collector made liquidation. Prior to that date there was no opportunity for the transferee to protest or take action of any character (other than giving notice which it did) to protect whatever of legal rights it may have had, nor could the transferor have done so. For the purpose of illustration, suppose the collector had liquidated the entry upon the basis of his original classification. The only remedy available to secure relief from such a liquidation would have been by

protest against it. Aargol Import Corp. could not have maintained a protest because it had ceased to be a party in interest, not having revoked the transfer. Appellant as the only party in interest surely would have had the right to protest the classification by reason of the passage of section 22 (b) before the transaction was completed by liquidation. Since, however, the collector (evidently reclassifying the merchandise) liquidated upon the correct basis as judicially declared in another case, the transferee had no occasion to invoke its right of protest against the original classification, and its only remaining interest was in obtaining the refund, the right to which by the terms of the statute could not have been destroyed by a revocation of the transfer.

It is our view that the statute by its very terms became retroactive from its effective date both as to the right to protest classification after liquidation subsequent to that date and as to the right to receive any refund of excessive duties resulting from a liquidation based upon reclassification.

We have examined with much care the decision of this court in the case of *Brown & Co. et al.* v. *United States*, 12 Ct. Cust. Appls. 93, T. D. 40026, cited by the Government, and we fail to find therein any holding which is deemed applicable here. The statute there construed contained no phraseology which so much as suggested that it was intended to be retroactive.

It is argued in the Government brief that—

\* \* \* upon the payment of the estimated duties at the time of withdrawal, a right to the refunds, if any, became vested in the original importer under the statutes and regulations in force before the effective date of Section 22. This was a right of which he could not constitutionally be divested by subsequent legislation. *Pritchard* v. *Norton*, 106 U. S. 124, 132. A construction of a statute which renders it unconstitutional as being divestive of substantive rights, must be avoided. *United States* v. *LaFranca*, 282 U. S. 568, 574. It can be avoided in the instant case by not construing the statute to be retroactive.

The rule announced in the cited cases is well recognized, at least by this court, but it has no applicability to the facts of the instant case. The Government received nothing from the original importer and owed it nothing. It is not conceivable that, under the facts here appearing, it could as a constitutional right have sustained an action based upon article 1201 (c) of the regulations to recover something for nothing.

We know of no provision of the Constitution which endowed it with such a right.

The other issue in this case is whether the refusal to pay the refund to appellant presents a protestable question in the sense of section 514 of the Tariff Act of 1930, the only statutory provision here relevant respecting protests.

As has been stated, the Customs Court held, in effect, that there is no provision in that section which confers jurisdiction on that court to entertain a claim such as that made in the protest at bar, and since the jurisdiction of that court is limited by statute it could find no authority to decide the question presented by the protest. It also held itself without authority to render a declaratory judgment.

Our jurisdiction like that of the Customs Court is fixed by statute and is as limited as is that of the Customs Court. Neither court is clothed with equity jurisdiction in the technical sense of the term "equity," nor is either clothed with authority to render a formal declaratory judgment which is binding upon either customs officials or importers, although, of course, they may and occasionally do indulge in *obiter*.

Unless, therefore, there can be found in section 514, *supra*, language which fairly may be construed to render a protest such as that at bar justiciable by the respective statutory courts having to do with customs issues, it must be held that the judgment of the Customs Court dismissing the protest in this case was proper. We, therefore, proceed to an examination of that question.

Section 514 reads as follows:

Except as provided in subdivision (b) of section 516 of this Act (relating to protests by American manufacturers, producers, and wholesalers), all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws, and his liquidation or reliquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation or reliquidation when such liquidation or reliquidation is made more than ten months after the date of entry, shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. The reliquidation of an entry shall not open such entry so that a protest may be filed against the decision of the collector upon any question not involved in such reliquidation.

There is, of course, no express provision authorizing a protest against the collector's refusal to refund excessive duties collected as a part of the estimated duties before liquidation, such as is expressly provided, for example, in the case of the collector's refusal "to pay any claim for drawback." That it is the duty of the collector to make such refunds, however, is so well understood that no citation

of statutory provisions concerning it and judicial decisions based thereon is necessary.

A refusal by the collector to pay a claim for drawback, or a refusal to reliquidate under the terms of the statute, an entry for clerical error, certainly constitutes a decision which although negative in character has all the effects of an exaction, and is subject to protest. It seems to us that a refusal to make refund of excessive duties is a negative decision, order, or finding which amounts to an exaction quite as much as a refusal to pay a claim for drawback, and we see no reason why section 514, *supra*, should be so narrowly construed with respect to the jurisdiction of the courts clothed with authority in customs matters as to deprive them of jurisdiction of a protest against such refund.

We apprehend that if Aargol Import Corp. had not transferred the involved merchandise but had itself made the withdrawals and the collector had arbitrarily, or under some mistaken construction of the law, refused to refund to it the excessive duties determined in the liquidation following the reclassification, jurisdiction of the Customs Court to determine a protest upon its part against the *refusal to make such refund*, would have been readily sustained upon the theory that it constituted a decision which in its practical aspects constituted an exaction. No such thing occurred, of course, because Aargol Import Corp. had ceased to be a party in interest and apparently was tendered or paid the refund, but the point is that under the facts appearing and the law applicable appellant had become subrogated to all the rights of Aargol Import Corp.

It is contended on the part of the Government that there was no refusal to make the refund due in this case. Under the facts above stated this appears to be true, but the tender of payment and payment (if it has, in fact, been made) was to a party not entitled to it, and there was a clear refusal to pay it to the party who, as was already shown by the official records in the collector's office, was entitled to it.

The brief on behalf of the Government states, *inter alia:*

\* \* \* it should be noted that the Collector had not refused to pay the refund· The Collector has admitted that a refund is properly due. The Collector's refusal is simply a refusal to make a choice of payees. He has refused to decide whether the refund previously determined to be due shall be paid to one or another claimant. The determination of the Collector to pay the refund to the original importer varied neither the fact that a refund should have been paid nor the amount payable.

As to this, the fact, of course, is that the collector *did* make a choice of payees, and under what we conceive to be the proper construction of the statutes he chose the wrong payee. Appellant should not suffer because of an erroneous legal construction by the collector— perhaps it would be more accurate to say by the Customs Bureau whose instructions the collector evidently followed.

Numerous cases have been cited in the brief on behalf of the Government before us. These have been examined but we do not find them relevant to the issues before us, which concededly are without precedent.

The trial court cited our decision in the case of *United States* v. *Astra Bentwood Furniture Co.*, 28 C. C. P. A. (Customs) 205, C. A. D. 147, as being "most nearly analogous in principle" to this case. We there held, in effect, that the refusal of the collector to post a bulletin notice of liquidation was not a decision or an order or finding entering into the same as to the rate and amount of duties chargeable, which made such refusal a proper matter for protest.

We think the distinction between the issues of that case and this are so clear that the decision there cannot properly be held controlling, or even persuasive, here.

The judgment of the United States Customs Court is *reversed* and the cause *remanded* for further proceedings in conformity with this decision.