Scott A. Silver, Miami, FL, for Plaintiff–Appellant.

Bradford Swing, Eugene E. Stearns, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., Miami, FL, for Defendant–Appellee.

Before TJOFLAT, Circuit Judge, FAY, Senior Circuit Judge, and HANCOCK*, Senior District Judge.

PER CURIAM:

The facts and procedural history of this case are set out in the district court's opinion reported at 33 F.Supp.2d 1041 (S.D.Fla.1998). For the reasons stated by the district court, *id.* at 1047–55 (part III.A. through III.C.), we find that the fees at issue do not constitute "interest" for purposes of the usury provisions of the National Bank Act, 12 U.S.C. §§ 85–86

* Honorable James H. Hancock, Senior District Judge for the Northern District of Alabama,

(1994). Accordingly, the judgment of the court is

AFFIRMED.

SWISHER INTERNATIONAL, INC., Plaintiff–Appellant,

v.

UNITED STATES, Defendant–Appellee,

No. 99–1277.

United States Court of Appeals, Federal Circuit.

Feb. 28, 2000

Rehearing and Suggestion for Rehearing En Banc Denied May 22, 2000.

sitting by designation.

Daniel G. Jarcho, McKenna & Cuneo, L.L.P., of Washington, DC, argued for plaintiff-appellant. With him on the brief were Peter Buck Feller, Joseph F. Dennin, Michael J. Haungs, and Myron P. Barlow.

Todd M. Hughes, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director; Jeanne E. Davidson, Deputy Director; and Lara Levinson, Attorney.

John M. Peterson, Neville, Peterson & Williams, of New York, New York, for amici curiae, Totes–Isotoner, Inc., et al. With him on the brief were George W. Thompson, and Curtis Walter Knauss.

Erik D. Smithweiss, Grunfeld, Desiderio, Lebowitz & Silverman, LLP, of New York, New York, for amicus curiae B.P. Oil Supply Company. With him on the brief was Robert B. Silverman.

Before NEWMAN, MICHEL, and PLAGER, Circuit Judges.

MICHEL, Circuit Judge.

Swisher International, Inc. ("Swisher") appeals from a summary judgment for the government by the United States Court of International Trade, dismissing some of its claims for a refund of the unconstitutional Harbor Maintenance Tax ("HMT") as time barred. *See Swisher Int'l, Inc. v. United*

*States,* 27 F.Supp.2d 234 (Ct. Int'l Trade 1998). The court held that 28 U.S.C. § 1581(i) (1994), not 28 U.S.C. § 1581(a), is the proper basis of jurisdiction for this constitutional challenge to the application of the HMT to exports. The court ruled that a Customs Service decision to deny a refund request based on such a challenge was not a decision subject to protest under 19 U.S.C. § 1514(a) and thus cannot support Court of International Trade jurisdiction under 28 U.S.C. § 1581(a). Since under the HMT regulation there is no time limit for filing a request for refund of the HMT,[1] if its denial were protestable, the refund claims in the complaint would not have been dismissable, given that Swisher had timely filed its protest and the subsequent Court of International Trade suit when the protest was denied. The court thus held that 28 U.S.C. § 1581(i), affording the Court of International Trade residual jurisdiction, was the exclusive jurisdictional basis for this suit. Because it held that jurisdiction arose under section 1581(i), the court entered judgment for the United States on all of Swisher's claims that were barred by the two-year statute of limitations applicable to that subsection.[2] The court entered judgment for Swisher on the claims related to HMT paid within the two-year statute of limitations. Swisher timely appealed to this court and the appeal was submitted for our decision on December 10, 1999, following oral argument. Because a denial of a requested refund, we hold today, is a decision as to a charge or exaction and thus protestable,

we reverse the judgment of the Court of International Trade dismissing those claims, and in light of the settled case law holding the HMT unconstitutional when applied to exports, remand for a refund calculation on all claims.

## BACKGROUND

The Harbor Maintenance Tax, 26 U.S.C. § 4461, was enacted in 1986 as a means of funding maintenance of the nation's ports. The tax was enacted as part of the Water Resources Development Act ("WRDA") and operates by imposing a fee on commercial vessels using the ports. The tax was assessed on importers, exporters, domestic shippers and commercial passenger transport.[3] *See* 26 U.S.C. §§ 4461, 4462 (1994). The revenues from the HMT are used to fund WRDA projects undertaken largely by the Army Corps of Engineers. The Department of Defense is authorized to undertake the maintenance and development projects, through the Secretary of the Army. The HMT portion of the statute is implemented by the Secretary of the Treasury, via the Customs Service. *See* 26 U.S.C. § 4462(i) (1994).

Congress authorized Customs to promulgate regulations and establish appropriate administrative procedures to implement the HMT. 26 U.S.C. § 4462(i). Congress also instructed that the tax should be administered and enforced as if it were a customs duty. 26 U.SC. § 4462(f)(1). Customs created a proce-

1. 26 U.S.C. §§ 4461, 4462, the statute authorizing the HMT, contains no discussion of refunds. The governing regulation merely specifies that a refund shall be requested by mailing Customs Form 350 to a designated address; no time period for filing a refund request is discussed. *See* 19 C.F.R. § 24.24(e)(5) (1998).

2. The applicable statute of limitations is 28 U.S.C. § 2636(i) (1994) which provides:
    ... (i) A civil action of which the Court of International Trade has jurisdiction under section 1581 of this title, other than an action specified in subsections (a)—(h) of this section, is barred unless commenced in

accordance with the rules of the court within two years after the cause of action first accrues.

3. The application of the HMT to exports was found unconstitutional in *United States v. United States Shoe Corp.,* 523 U.S. 360, 118 S.Ct. 1290, 140 L.Ed.2d 453 (1998). Application of the HMT to commercial passenger transport, however, was held constitutional by this court. *See Carnival Cruise Lines v. United States,* 200 F.3d 1361 (Fed.Cir.2000). Cases addressing the constitutionality of the HMT as applied to imports are still pending at the time of this decision.

dure in which the exporter was liable for the HMT at the time it loaded the cargo, but was not required to pay the HMT until the end of the quarter. 19 C.F.R. § 24.24(e)(2) (1998). Quarterly payments were required to be submitted accompanied by the "Harbor Maintenance Fee Quarterly Summary Report" (Customs Form 349) within 31 days of the end of the quarter. 19 C.F.R. § 24.24(f). Exporters could make supplemental payments or request refunds of overpayments by filing a Harbor Maintenance Fee Amended Quarterly Summary Report (Customs Form 350). *Id.* at § 24.24(e)(5).

Customs Form 350 provided four specific factual or legal reasons for requesting a refund, as well as a fifth general, catch-all provision: "(1) Calculations/Clerical Error; (2) Duplication of Payment; (3) Misinterpretation of Exemption; (4) Overvaluation of Shipments; (5) Other—Please Specify –." Neither Customs Form 350 nor the refund regulations contain any time limit for making a supplemental payment or requesting a refund of export HMT. *Id.*

Appellant Swisher paid HMT from the fourth quarter of 1990 through the second quarter of 1994. Swisher then sought a refund of all HMT paid, on the sole ground that its exports were exempt from the tax under Article I, Section 9, Clause 5 of the Constitution.[4] Unlike many other exporters seeking to challenge the constitutionality of the HMT, Swisher sought its refund by filing on September 28, 1994 Amended Quarterly Summary Reports for each quarter that it had paid the HMT. Swisher used the catch-all "other" category and specified "[s]hipments exempt from tax under Article I, Section 9, Clause 5, United States Constitution" as the basis for its refund.

Customs denied Swisher's refund request in a letter dated October 26, 1994. Customs denied the request on the grounds that the HMT was a constitutional

fee and alternatively that the request was not timely filed for some of the HMT at issue. The Customs letter in response to Swisher's refund request appeared to treat Swisher's refund request as a "protest" and advised Swisher that it could "file a civil action contesting the denial of this protest under 19 U.S.C. § 1514 in the Court of International Trade."

On November 21, 1994, Customs published a Federal Register notice promulgating procedures for protests concerning the constitutionality of the export HMT. The procedures instructed that protests were to be filed within 90 days of collection by Customs, on Customs Form 19 (the standard Customs protest form), in letter form, or in the form of statements of protest affixed to the Quarterly Summary Report normally used to file HMT payments. *User Fee Protests*, T.D. 94091, 59 Fed.Reg. 60,044 (1994). Instead of filing an action in the Court of International Trade as instructed in the refund denial letter of October 26, Swisher filed, on November 23, 1994, a protest on Customs Form 19, challenging the denial of its refund requests. On February 24, 1995, Swisher requested accelerated disposition of its protest. Accelerated requests are deemed denied as a matter of law if no action has been taken within 30 days of the request for accelerated disposition. *See* 19 U.S.C. § 1515. When, because of the acceleration request, the Swisher protest was denied as a matter of law on March 26, 1995, Swisher filed this action with the Court of International Trade on March 29, 1995. The action was stayed immediately upon filing pending the outcome of *United States v. United States Shoe Corporation*, a previously filed challenge to the export HMT. *See* 907 F.Supp. 408 (Ct. Int'l Trade 1995) (holding that the HMT was unconstitutional when applied to exports), *affirmed United States Shoe Corp. v. United States*, 114

---

4. The clause states:
   No Tax or Duty shall be laid on Articles exported from any State.

U.S. Const. Art. I § 9, 5.

F.3d 1564 (Fed.Cir.1997), *affirmed United States v. United States Shoe Corp.*, 523 U.S. 360, 118 S.Ct. 1290, 140 L.Ed.2d 453 (1998).

Swisher participated in the *U.S. Shoe* case as an *amicus curiae*, asserting a unique jurisdictional argument, that the denial of an HMT refund request pursuant to the governing regulation, 19 C.F.R. § 24.24(e)(5), is a protestable decision and thus subsection 1581(a) provides the appropriate basis for Court of International Trade jurisdiction. The parties in *U.S. Shoe* asserted slightly different jurisdictional arguments. In *U.S. Shoe*, the government argued that jurisdiction was proper under section 1581(a) because the decision by Customs to accept the HMT was a protestable decision. The plaintiff in *U.S. Shoe* argued that jurisdiction was proper under subsection 1581(i).

The relevant portions of the jurisdictional statute state:

(a) The Court of International Trade Shall have exclusive jurisdiction of any civil action *commenced to contest the denial of a protest,* in whole or in part, under section 515 of the Tariff Act of 1930.

. . .

(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

28 U.S.C. § 1581 (1994) (emphasis added). The statute defines a protestable decision as:

. . . decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to—

(1) the appraised value of merchandise;

(2) the classification and rate and amount of duties chargeable;

(3) *all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;*

(4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;

(5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof;

(6) the refusal to pay a claim for drawback; or

(7) the refusal to reliquidate an entry under subsection (c) or (d) of section 1520 of this title;

shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section . . .

19 U.S.C. § 1514(a) (emphasis added).

In *U.S. Shoe* the Court of International Trade rejected the government's theory that acceptance of the HMT payment by Customs was a protestable decision. Accordingly, the court held that section 1581(i) was the proper basis for jurisdiction. The court also rejected Swisher's jurisdictional theory in dicta, stating that

Customs does not have the power to decide the constitutionality of the HMT and therefore could not issue a protestable decision pursuant to the refund provision of section 24.24(e)(5). *See U.S. Shoe,* 907 F.Supp. 408, 421 (Ct. Int'l Trade 1995).

This court heard *U.S. Shoe* on appeal. *See* 114 F.3d 1564 (Fed.Cir.1997). While not addressing Swisher's argument directly, the panel did state that section 1581(a) was "not directly applicable" because "it applies to suits commenced to contest the denial of a protest." *U.S. Shoe,* 114 F.3d at 1569. This court then found the HMT unconstitutional when applied to exports. The government appealed the constitutional ruling to the Supreme Court, but did not appeal the jurisdictional holding. Nevertheless, the Supreme Court observed that the "[Court of International Trade] properly entertained jurisdiction in this case" noting that Customs has not issued a decision but "merely passively collect[ed] HMT payment." 523 U.S. at 365, 118 S.Ct. at 1293.

Following the Supreme Court decision in *U.S. Shoe,* the Court of International Trade designated a number of test cases to resolve outstanding HMT issues. *Swisher* was designated a "test case" to resolve the question of whether the denial of a request for refund of the export HMT is a protestable Customs Service decision such that subsequent Court of International Trade jurisdiction is proper under section 1581(a). On summary judgment, the Court of International Trade held that the denial of a refund request was not a protestable decision and thus jurisdiction was not proper under section 1581(a). That court then held that section 1581(i) residual jurisdiction was proper and the two-year statute of limitations on actions under section 1581(i) was applicable, thus barring Swisher's claims for a refund of all HMT paid prior to October 27, 1992. *See Swisher Int'l, Inc. v. United States,* 27 F.Supp.2d 234. Swisher timely appealed to this court.

This court has jurisdiction over this appeal, as it seeks review of a final decision of the Court of International Trade, pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

On appeal, Swisher asserts that denial of a refund request made pursuant to 19 C.F.R. § 24.24(e)(5) on any ground, including that the "export HMT" is unconstitutional, is a protestable decision. Hence, Swisher argues, because it followed all of the required procedures to protest Customs' denial of the refund request and that protest was denied, the Court of International Trade's jurisdiction rested on 28 U.S.C. § 1581(a).

The Court of International Trade held, and the government argues, that section 1581(a) cannot be the proper basis of jurisdiction because this court has already decided that section 1581(i) is the proper basis of jurisdiction for a lawsuit challenging the constitutionality of the HMT. The crux of the government's argument is that because by its very terms subsection (i) is only applicable when *no* other subsection is available, if there had been a basis for invoking subsection (a) jurisdiction in export HMT challenges, then the *U.S. Shoe* plaintiff would have been required to do so. As the Supreme Court, like this court, found section 1581(i) jurisdiction proper for the *U.S. Shoe* plaintiff, the government argues, both courts must have determined that subsection (a) jurisdiction was *not* available for constitutional challenges to the export HMT. Finally, the government argues that denial of such a refund request cannot be a protestable decision because such a holding would "eviscerate" the statute of limitations by allowing an exporter to accrue a cause of action at any time it chose simply by filing a request for a refund. The government further argued that since only final decisions of Customs are protestable the denial of a refund request cannot be protestable because the refund request is a voluntary procedure. The Court of International Trade also rea-

soned that the request for refund was not a mandatory procedure, because this court did not require the *U.S. Shoe* plaintiff to file a refund request. In further support of this argument, the Court of International Trade points again to the open ended time for filing a refund request as evidence that the procedure is not mandatory.

■ Thus, the principal issue before us is whether, in light of the implications of the decisions in *U.S. Shoe*, the denial of Swisher's refund request can be a protestable decision within the meaning of 19 U.S.C. § 1514(a), thus giving rise to the trial court's jurisdiction under section 1581(a). This is a question of law, and thus is subject to *de novo* review in this court, *see Dehne v. United States*, 970 F.2d 890, 892 (Fed.Cir.1992), as is the instant grant of summary judgment itself. We address first whether either decision in *U.S. Shoe* precludes our founding jurisdiction in the trial court on section 1581(a), and second, if not, whether, under 19 U.S.C. § 1514(a), Customs' denial of Swisher's refund request resulted in a protestable decision, a pre-requisite of section 1581(a) jurisdiction.

## I.

The Supreme Court's and this court's opinions in *U.S. Shoe* both stated that in that case there was no protestable Customs decision with respect to the constitutionality of the HMT. *See* 523 U.S. at 363–68, 118 S.Ct. at 1293–94 ("protests are not pivotal, for Customs 'performs no active role,' it undertakes no analysis … instead merely 'passively collects' HMT payments.") (quoting *U.S. Shoe*, 114 F.3d at 1569). The courts therefore allowed the suits although they were filed in the Court of International Trade without a prior protest. Thus, the government argues, we cannot now find that Swisher accrued a protestable decision simply by filing a refund request, albeit a constitutionally-inspired one. Swisher argues, however, that because the *U.S. Shoe* plaintiff had filed neither a refund request nor a protest of denial of a refund request, the holding in that case is not applicable here, where Swisher did file a refund request and, when it was denied, a protest, which was also denied. We agree with Swisher.

In *U.S. Shoe*, the government argued that Customs' mere *acceptance* of the exporter's payment of the HMT was a "decision" of Customs subject to protest. Because the *U.S. Shoe* plaintiff had not protested the collection, but filed directly in the court below, the government said that suit had no jurisdictional basis. It was only this argument that the Supreme Court, like our court, rejected in holding that there was no protestable decision and thus no jurisdiction under section 1581(a). Neither our decision nor that of the Supreme Court, however, reached the question of whether section 1581(a) jurisdiction would have been available had a protest been filed and denied following the filing and denial of a refund request. Thus *U.S. Shoe* does not preclude our consideration of section 1581(a) jurisdiction in this case where a refund request and protest were, in turn, filed and denied.

This court has indeed stated that "[s]ection 1581(i) jurisdiction may not be invoked when jurisdiction under any other subsection of section 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed.Cir.1987). Nevertheless, the *U.S. Shoe* interpretation of the jurisdictional statute does not control subsequent suits asserting similar challenges but in different procedural postures. Moreover, our holding in *Miller* (and other decisions) is meant merely to prevent a party from asserting residual (subsection (i)) jurisdiction when jurisdiction under another subsection would be appropriate. In *U.S. Shoe*, another basis was not available; here it is.

Swisher pursued its constitutional challenge along a procedural path entirely dif-

ferent from that chosen by the *U.S. Shoe* plaintiff. In addition, it appears that there was much confusion in Customs and among exporters as to the proper procedure for challenging the constitutionality of the HMT as applied to exports. Indeed, Customs had published a Federal Register notice urging that parties file a protest within 90 days of collection of the tax by Customs to challenge the constitutionality of the export HMT, *see User Fee Protests*, 59 Fed.Reg. 60,044, after some plaintiffs had filed in district court and others, like the *U.S. Shoe* plaintiff, filed first in the Court of International Trade, all without prior refund requests or protests. Thus, at the time, there was not one obvious jurisdictional basis that this court could have required the *U.S. Shoe* plaintiff to use, and the court rejected the jurisdictional basis advocated by Customs in its arguments and in the Federal Register notice.

Our holding in *U.S. Shoe* that there was no protestable decision was limited to the procedural posture of that case. There, the plaintiff indeed did not have a protestable decision that could have given rise to jurisdiction under section 1581(a) because, unlike Swisher, it had not filed a refund request. Thus, there was no Customs decision at all. Having rejected the government's argument that Customs' mere acceptance of the HMT was itself a protestable decision, we thus found jurisdiction in *U.S. Shoe* was appropriate under section 1581(i) because it could not have been proper under any other subsection. Our holding in *U.S. Shoe* thus does not dictate only one possible procedure for challenging the export HMT. Our holding in *U.S. Shoe* was merely that, given the procedural posture of that case, section 1581(i) residual jurisdiction was the appropriate jurisdictional basis. Thus, *U.S. Shoe* does not limit Swisher, or other challengers to the HMT, to section 1581(i) jurisdiction and its attendant two-year statute of limitations.

## II.

Having held that Swisher may assert a jurisdictional basis different from that found applicable to the *U.S. Shoe* plaintiff, we must now decide if a protestable decision arose from Customs' denial of Swisher's request for a refund of the HMT.

Swisher's theory of protestability asserts that Customs' denial of its refund request was a decision "as to the amount of duties chargeable" or "as to a charge or exaction . . . within the jurisdiction of the Secretary of the Treasury," as specified in 19 U.S.C. §§ 1514(a)(2) and (3), the statute that provides for protests of final Customs decisions. The government, however, once again attempts to use *U.S. Shoe* to block Swisher, arguing that a request for a refund cannot be a protestable decision because the protest statute only covers final decisions of Customs. The decision on the refund could not be a final decision, the government argues, because the decision in *U.S. Shoe* precludes a finding that a request for refund is a mandatory procedure. The Court of International Trade reasoned, and the government now argues, that non-mandatory procedures cannot result in a final decision, and therefore protestable decision of Customs. We find this argument unpersuasive.

There is nothing in the regulation indicating that the filing of an HMT refund request is voluntary. Nor does the regulation in any way indicate that a taxpayer might proceed directly from payment to filing suit, under the 19 U.S.C. § 1581(i) residual jurisdiction of the Court of International Trade, to seek a refund of the HMT. Indeed, the regulation merely says that refund requests should be made on Customs Form 350. The regulation does not distinguish among types of refunds that may be requested using the procedure, nor does it direct taxpayers to file, as an alternative, in the Court of International Trade.

Furthermore, the *U.S. Shoe* decision by this court did not directly address whether HMT refund requests pursuant to 19

C.F.R. § 24.24(e)(5) were voluntary. The *U.S. Shoe* plaintiff had not filed a refund request and neither party in that case argued that a refund request should have been filed. The *U.S. Shoe* decision merely held that collection of the HMT is not a protestable Customs decision. In addition, the Court of International Trade decision in *U.S. Shoe* mentioned in dicta that Customs decisions as to the administration of the tax (but not its constitutionality) were protestable decisions. *See U.S. Shoe,* 907 F.Supp. at 421. Thus, neither of those decisions supports the argument now forwarded by the government that denial of any refund requests is not a protestable decision.

In addition to requiring a tortured reading of our case law and the Customs regulation, the government's proposed interpretation would, in effect, require any HMT taxpayer who discovered an error entitling it to a refund to file a suit with the Court of International Trade within two years of collection of the HMT or risk losing the refund. Whether such a taxpayer had filed the "voluntary" refund request would be irrelevant to the statute of limitations. Any taxpayer following the instructions in the regulation and first filing a refund request would risk losing its cause of action if the processing of the refund request took more than two years. The government's argument that the protest procedures are voluntary would render the refund portion of the regulation superfluous. We are not willing to make such an interpretation of the HMT regulations. In any event, as discussed *infra,* binding precedent of our predecessor court holds that denial of a request for a refund of deposited duties on imports is a protestable decision. *See Eurasia Import v. United States,* 31 C.C.P.A. 202, 211–12 (1944). We see no reason to treat the HMT refund requests as a "voluntary procedure" merely because the HMT is imposed, in this case, on exports.[5]

■ In addition, the government asserts that the protest statute only covers decisions "as to a charge or exaction." The denial of a refund request, the government asserts, is not a decision as to a charge or exaction. Further, the government argues, if the statute was intended to apply to *refusals* to grant refunds on charges or exactions, it would explicitly say as much, for the statute does explicitly state that "refusals to pay a claim for drawback" and "refusals to reliquidate an entry" are protestable decisions. *See* 19 U.S.C. § 1514(a)(6) & (7). Thus, the government argues, while the decision to *accept* that payment might have been considered a "decision as to a charge or extraction" before *U.S. Shoe,* the decision to *deny a refund* of such charge or exaction may not. The government then argues—again using *U.S. Shoe*—that the decisions in *U.S. Shoe* preclude a finding that Customs' mere acceptance of the tax payments is a protestable decision. We cannot agree with such an interpretation of the statute and our case law.

We are given no reason to strain to exclude a decision as to a refund of a charge or exaction from the definition of a "decision as to a charge or exaction." Indeed a precedential decision by our predecessor court, the Court of Customs and Patent Appeals, explicitly holds that the denial of a request for a refund is indeed a protestable decision. *See Eurasia Import,* 31 C.C.P.A. at 211–12. Addressing whether an earlier version of 19 U.S.C. § 1514(a)[6] authorized a protest of a refund denial, that court held:

> There is, of course, no express provision authorizing a protest against the collec-

---

**5.** The Court of International Trade has held that payment of the HMT on imports merges into liquidation and thus is a protestable decision. *See Thomson Consumer Elec. Inc. v. United States,* 62 F.Supp.2d 1182 (Ct. Int'l Trade 1999).

**6.** The relevant language of section 514 of the Tariff Act of 1930 and 19 U.S.C. § 1514(a) is virtually identical.

tor's refusal to refund excessive duties ... such as is provided, for example, in the case of the collector's refusal "to pay any claim for drawback." That it is the duty of the collector to make such refunds, however, is so well understood that no citation of statutory provisions concerning it and judicial decisions based thereon is necessary.... It seems to us that *a refusal to make refund of excessive duties is a negative decision, or finding which amounts to an exaction quite as much as a refusal to pay a claim* for drawback and we see no reason why section 514 ... should be so narrowly construed with respect to the jurisdiction of the courts ... as to deprive them of jurisdiction of a protest against such refund.

*Id.* at 211–12 (emphasis added).

Furthermore, the case law relied on by the government is neither apposite nor binding on this court. The government cites *Alberta Gas Chemicals, Inc. v. Blumenthal,* 82 Cust.Ct. 77, 467 F.Supp. 1245, 1249–50 (Cust.Ct.1979), and a case quoting it, as holding that a charge or exaction is limited to "actual assessments of specific sums of money." But this is mere dicta. In *Alberta Gas,* the court was addressing an argument that an agency decision to begin an anti-dumping investigation was a decision as to a charge or exaction. Viewed in that context, we do not read the Customs Court's statement to exclude a decision about a requested refund from the sphere of "actual assessments of specific sums of money." In any event, unlike decisions of our predecessor courts, decisions of the predecessor to the Court of International Trade, a trial court, do not bind us. To the extent *Alberta Gas* can be construed as the government suggests, we reject it.

In further support of its holding that the denial of Swisher's refund request was not a protestable decision, the Court of International Trade said that it would be "incongruous" to allow a plaintiff to convert the "no decision" of HMT payment accep-

tance into a protestable decision merely by filing a refund request. Likewise, the government argues that Swisher's theory "eviscerates any statute of limitations" by allowing the plaintiff to control both the existence of a protestable decision and the timing of the decision. The Court of International Trade opinion cites our decision in *United States v. Cocoa Berkau, Inc.,* which declares that a court cannot interpret the accrual of a right of action in such a way that it "permits a single party to postpone unilaterally and indefinitely the running of the statute of limitations." 990 F.2d 610, 614 (Fed.Cir.1993) (quotations omitted). Swisher responds that the governing HMT regulation has no time limit on requests for refunds or corrections of underpayments or overpayments based on clerical errors or other mistakes in calculating the HMT owed. Thus, Swisher argues, a regulatory failure to impose a period of limitations on refund requests should not preclude a finding that denial of a request for a refund is a protestable decision.

■ While we agree with the principle of *Cocoa Berkau* that courts should be cautious not to deprive one party of the repose intended by a statute of limitations by allowing another party to accrue a cause of action at will, that is not the situation in this case. Swisher did not sleep on its constitutional claims only to file the refund requests after a long delay. Rather, Swisher promptly filed its request for a refund in 1994, at the same time that many other exporters began to question the constitutionality of the HMT as it applied to exports. Thus, the filing by Swisher in 1994 for refund of payments going back to 1990 is comparable to that of an exporter who discovered four years after the fact that it had overpaid its HMT because of a calculation error.

■ By leaving the time for filing refund requests open, the regulation seems to contemplate that an HMT taxpayer might discover overpayments and request

refunds of those overpayments many years after the payments were made. Likewise, the regulation appears to allows Customs to audit all of a taxpayer's HMT payments anytime within five years of calculation of the payment. *See* 19 C.F.R. § 24.24(g) (1999).[7] Indeed, in a case recently before this court, *Princess Cruises v. United States*, 201 F.3d 1352 (Fed.Cir.2000), in 1991 Customs began an audit of the cruise line's HMT payments dating back to 1987. Thus, neither the government nor the taxpayer is barred by a two-year statute of limitations from initiating actions involving adjustments to HMT payments. Allowing a taxpayer a similar amount of time to seek a refund of a tax, on the ground that rather than miscalculated, it is altogether unlawful, is not, in our view, "incongruous." That Customs, by intent or in error, promulgated a regulation that does not provide a time limit for filing refund requests does not warrant our creating a limitation period by the expedient of deeming refund requests not protestable. Analogous procedures for refund of import duties have statutorily imposed time limits; however, there does not appear to be a generic limitation period on requesting refunds generally.[8] Customs was free to impose time limits on the filing of HMT refund requests just as the statutes impose time limits on reliquidation requests, and it remains free to alter the regulation to impose a time limit in the future. This court, however, will not impose a time limit on refund requests by holding, without

basis, that such requests are not protestable.

Allowing exporters to seek refunds of all HMT paid since 1987 also avoids a fundamental unfairness to those exporters who did not have the resources to mount test litigation in the district court or the Court of International Trade on the constitutionality of the export HMT. In contrast, if we were to hold that a request for refund was not a protestable decision, Swisher, and others, would be limited to recovering only that HMT paid within two years before filing suit in the Court of International Trade. Given that the constitutionality of the HMT was not seriously questioned until 1994 and not completely resolved until 1998, such a holding would bar recovery of much of the unconstitutional HMT paid by exporters between 1987 and 1998. Indeed, some exporters with limited legal resources might be completely barred from recovering their payments of the unconstitutional tax. Erroneous overpayments during the same period due to miscalculations, however, would be recoverable even if the miscalculation was not discovered until today. We decline to create such an anomalous situation, although the government so urges. Finding no reason to believe that a request for refund, based on a clerical error, is not a protestable decision (and thus not time barred after two years from collection), we see no reason to treat differently requests based on constitutional error.

---

7. The regulation requires that HMT taxpayers maintain all documents for Customs inspection for five years from the time of calculation. *19 C.F.R. § 24.24(g).* The regulation, however, does not explicitly prohibit the government from auditing HMT payments after five years.

8. In fact, it is not at all clear that refunds on import duties, which comprise the vast majority of the money collected by Customs, would or could be requested outside of the bounds of the liquidation or reliquidation procedures. With regard to imports, most fees, including the HMT, are collected at liquidation. Any fee collected at liquidation is considered

merged with the liquidation. *See Thomson Consumer Elec., Inc. v. United States*, 62 F.Supp.2d 1182 (Ct. Int'l Trade 1999). A legal challenge to a liquidation decision must be made as a protest within 90 days of liquidation. *See Mattel Inc. v. United States*, 72 Cust.Ct. 257, 377 F.Supp. 955, 960 (Cust.Ct. 1974); 19 U.S.C. § 1514(c)(3)(A). A challenge based on a clerical error, or other factual mistake must be raised within one year of liquidation in a request of reliquidation. *See* 19 U.S.C. § 1520(c). Denial of a request for reliquidation under section 1520(c) is a protestable decision. *See* 19 U.S.C. § 1514(a)(7).

Accordingly, we hold that the denial of a request for refund is a protestable decision and thus can accrue a claim based on the alleged illegality of the exaction of the HMT even if the request, which under the HMT regulation can be filed at any time, is made after the two-year statute of limitations has run on suing over the act of payment of the tax. Hence, Swisher's cause of action accrues at the time of the denial of the protest following the denial of the refund request, and the 180–day period of limitations for filing with the Court of International Trade runs only from that date.[9]

## CONCLUSION

The summary judgment of the Court of International Trade dismissing Swisher's refund claims is therefore

*REVERSED* and the case is *REMANDED*.

## COSTS

Each party to pay its own costs.

9. Suits filed following the denial of a protest must be filed with the Court of International Trade within 180 days after the denial of the protest. 19 C.F.R. § 174.31 (1999). Swisher's protest was denied as a matter of law on March 26, 1995 and as it filed suit in the Court of International Trade on March 29, 1995, its suit was timely filed.