SLIP OP. 02-102

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| M.G. MAHER & CO., INC., itself and on behalf of its clients, and VAN ZYVERDEN, INC., on behalf of themselves and all other similarly situated persons and/or entities who are named in the United States Customs Service's Harbor Maintenance Tax on ocean exports and who have not filed claims for refund thereof as of December 31, 200l,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES, PAUL H. O'NEILL, Secretary of the Treasury, and ROBERT C. BONNER, Commissioner of Customs | Court No. 01-01134 |

[Class Action Challenging HMT Refund Claim Regulatory Time Limit Dismissed.]

Dated: August 30, 2002

Thomas J. Kovarcik and Steven R. Sosnov, of counsel, for plaintiffs.

Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, Todd M. Hughes, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Michael M. Duclos), Richard McManus, Office of General Counsel, United States Customs Service, of counsel, for defendants.

## OPINION

**RESTANI, Judge:**

This matter is before the court on plaintiffs' motion for class certification and defendants'

motion to dismiss. Plaintiffs allege that 19 C.F.R. § 24.24(e) (finally promulgated on July 2,

2001) which established a deadline of December 31, 2001 for filing Harbor Maintenance Tax ("HMT") refund claims is invalid. The court determines that this action shall be dismissed.

## BACKGROUND AND JURISDICTION

In United States v. U.S. Shoe Corp., 523 U.S. 360 (1998), the Supreme Court found that the HMT, 26 U.S.C. § 4461 et seq., which applied to nearly all merchandise shipped through the ports of the United States, was unconstitutional as applied to exports by reason of the Export Clause, U.S. Const., Art. I, § 9, cl. 5. U.S. Shoe, 523 U.S. at 370.

Parties who filed suit pursuant to the court's residual jurisdiction, 28 U.S.C. § 1581(i), received refunds from the government pursuant to a court approved claims resolution procedure, which has returned hundreds of millions of dollars to the taxpayers of payments made within the two year statute of limitations found at 26 U.S.C. § 2636(i) (2000). Other parties chose to follow an administrative refund route, a remedy which was not clearly available until recognized in Swisher Int'l., Inc. v. United States, 205 F. 3d 1358, 1369 (Fed. Cir.), cert. denied, 531 U.S. 1036 (2000), as a viable avenue of relief, agency denial of which would result in the availability of jurisdiction in this court under 28 U.S.C. § 1581(a) (2000) (Customs protest denial jurisdiction). Further refunds have been made pursuant to a second court approved claims resolution procedure for § 1581(a) jurisdiction cases.

Ordinarily, § 1581(i) jurisdiction is not available if another provision of § 1581 sets forth an available basis of jurisdiction. See Miller v. United States, 824 F. 2d 961, 964 (Fed. Cir. 1987). The court in Swisher did not explain why § 1581(i) could be utilized in U.S. Shoe, even though in Swisher the court found that § 1581(a) was available to parties who filed or could file

refund requests.  205 F.3d at 1364.  The answer may be that the defendants' insistence that § 1581(a) jurisdiction was not available for denial of protest of rejection of HMT refund requests, as a practical matter, precluded the ready availability of § 1581(a) jurisdiction for early refund seekers, such as U.S. Shoe.

Times have changed, however.  Both the courts and the United States Customs Service ("Customs") have made it very clear that refunds are to be made for timely HMT export refund requests and that rejection of such refund requests will lead to §1581(a) jurisdiction.  Unless Miller is no longer good law or an exception exists for these cases, HMT refund seekers must pursue claims through Customs.

Following Swisher, in Thomson Consumer Electronics, Inc. v. United States, 247 F.3d 1210  (Fed. Cir. 2001), the Court of Appeals allowed HMT importer claims to be brought  under 28 U.S.C. § 1581(i), even though § 1581(a) jurisdiction was clearly available.  It reasoned that making a purely constitutional claim before Customs as to the validity of a statute would be futile.   Excusing exhaustion of statutorily mandated administrative procedures is a strong use of the futility doctrine.  See 19 U.S.C. § 1514.  It would seem unlikely that the statutory procedures may be avoided except in very similar circumstances.

Although Customs says it will readily deny late requests and plaintiffs claim the administrative process is thus an exercise in futility, the court sees many reasons for requiring agency processing of claims here.  First, it will be the agency that will verify amounts owed and make refunds, even if it does so pursuant to court order.   Second, the agency is entitled to know what claims exist against it and to contemplate disposition of such claims in the first instance.  It may be that particular claims may be paid or settled, even if at first glance they appear untimely

under the regulation.  Finally, both constitutional and statutory claims are made here, unlike

Thomson, and the relief sought, rescinding of the regulation, may be carried out by Customs.

This is not the total legal and practical futility observed in Thomson.

The court recognizes, however, that jurisdiction in this area is unsettled, most notably

because of the tension among Miller, Swisher and Thomson.  Accordingly, it assumes for the

sake of argument that there is 28 U.S.C. § 1581(i) jurisdiction for this action.  It also assumes

that plaintiffs have filed within the two year statute of limitations of 28 U.S.C. § 2636(i)

because the relief they seek is an invalidation of a July 2001 regulation.  Finally, plaintiffs

attempted to add parties with facial standing in June 2002.[1]  Thus, even though the court would

dismiss this action for failure to complete a statutorily required administrative process, in the

interest of judicial economy, the court turns to defendants' second ground for dismissal, failure to

state a claim.

As a preliminary matter, even though a court normally considers class certification before

the merits, it seems particularly important to consider whether there is any point to continuing

this matter at all because jurisdiction is uncertain and the discretionary considerations as to

whether to certify a class are very difficult.[2]  See Clincher v. United States, 205 Ct. Cl. 8, 11, 499

F. 2d  1250, 1252 (1974) (class members should not be invited to "board a sinking ship".)

---

[1]  The original plaintiffs may have opted out or filed timely refund requests.  Thus, standing on their behalf may be lacking.   The new parties' requests appear barred by the challenged regulation.  Because the court is dismissing this action it accepts, without further inquiry, plaintiffs' allegation that one or more of these parties has standing.

[2]  The mandatory requirements of USCIT Rule 23(a) would seem to be met.  See Baxter Healthcare Corp. v. United States, 20 CIT 552, 925 F. Supp. 794 (1996) (finding USCIT Rule 23(a) satisfied, but not Rule 23(b), in HMT case)

Accordingly, accepting all of plaintiffs' factual allegations as true, the court will consider

defendants' dispositive legal arguments.

A. **19 C.F.R. § 24.24(e) Is Not Unconstitutional**

Plaintiffs argue that when taxes are involved only Congress may establish a statute of

limitations. Plaintiffs cite no case that stands for the proposition that when it permits an agency

to process tax refund claims, that such agency is prohibited from establishing reasonable time

limits to permit the orderly administrative processing of such claims. In Stearn v. Dep't of the

Navy, 280 F.3d 1376, 1381-84 (Fed. Cir. 2002), the Federal Circuit upheld regulatory time bars

of claims against the government. The court finds nothing to prevent application of Stearn, a

civil service retirement benefits case, to HMT refund claims. Congress may delegate authority

under its taxing power in the same manner as under its other powers. See Skinner v. Mid

America Pipeline Co., 490 U.S. 212, 223 (1989). Furthermore, the regulatory time limit is not in

derogation of the statutory scheme. Rather it restores it. When the court in Swisher recognized

Customs refund procedure as applicable to these constitutional claims, a gap in the statute of

limitations which covers all actions before the court was created. See 28 U.S.C. § 2636.

Because the refund procedure established by Customs created the gap, Customs surely may

remedy this problem by filling the gap. The regulation at issue does nothing more than restore

the effect of the statute of limitations enacted by Congress. Customs has rule-making authority

under 26 U.S.C. § 4462(i) (2000) and properly exercised it here. There is no unconstitutional

delegation of authority.

Recently for purposes of deciding if interest is owed on HMT refunds, the Federal Circuit

ruled that the unconstitutional imposition of the HMT on exports does not give rise to a taking

claim. U.S. Shoe v. United States, 296 F. 3d 1378 (Fed. Cir. 2002).  If the unauthorized retention of HMT itself is not a taking, similarly unauthorized limitation of the time period for filing an HMT refund claim is not a taking.

If the regulation is authorized it is still not a taking.  The HMT Fund is a public fund as to which there can be no taking of private property. Id. at 1384.  A time limitation on plaintiffs' claims to a refund of amounts paid into that fund is not a taking of their property.  Thus analysis of whether the regulatory time limitation is an undue burden on plaintiffs' property is not required.

**B.  19 C.F.R. § 24.24(e) does not give rise to a claim under the Regulatory Flexibility Act ("RFA"), 5 U.S.C. § 603.**

The purpose of the RFA is to address "the high cost to small entities of compliance with uniform regulations." Mid-Tex Elec. Co-op., Inc. v. FERC, 773 F.2d 327, 342 (D.C. Cir. 1985). Agencies, however, are relieved of performing this analysis when they certify "that the rule will not, if promulgated, have a significant economic impact on a substantial number of small entities."  5 U.S.C. § 605(b) (2000); see, e.g., State of Michigan v. U.S. Environmental Prot. Agency, 213 F. 3d 663, 688-89 (D.C. Cir. 2000).

In accordance with § 605(b), Customs certified that a regulatory time limit for filing refund claims would not have a significant economic impact on a substantial number of small entities.  See 66 Fed Reg. 34813, 34818 (July 2, 2001); 65 Fed. Reg. 78430 (Dec. 15, 2000). Thus, Customs did not perform an RFA analysis.  Plaintiffs argue that Customs committed error by concluding that there would be no significant economic impact.  They contend that the imposition of a December 31, 2002 deadline for filing refund claims results in the denial of approximately $200 million in HMT refunds for 100,000 exporters.

Defendants argue that plaintiffs grossly exaggerate both the number of potential claimants as well as the amount of unrefunded export HMT payments. Nevertheless, even if these figures are accurate, they are irrelevant to the question of whether Customs was required to conduct an RFA analysis here. Plaintiffs' argument fails because it misconstrues the "economic impact" relevant to an RFA analysis. As the D.C. Circuit has explained: "[I]t is clear that Congress envisioned that the relevant 'economic impact' as the impact of compliance with the proposed rule on regulated small entities." Mid-Tex Elec., 773 F. 2d at 342 (emphasis added); accord State of Colorado v. Resolution Trust Corp., 926 F. 2d 931, 948 (10th Cir. 1991).

The court declines to construe the RFA impact at issue here as the amount that might not be recovered because some exporters had insufficient interest in complying with regulations, or in keeping themselves apprised of properly promulgated regulations that they should know would affect their business interests. Customs conclusion when it published the final regulations of no significant impact for RFA purposes is correct. See 66 Fed. Reg. 34813, 34816 (July 2, 2001).

Plaintiffs' alternative argument that Customs was arbitrary and capricious in not studying, for the purposes of the "no significant economic impact" finding, the cost of compiling records to make a request is inapposite. Customs searches its records upon receipt of a letter request. Difficulties of claimants in searching their own records if Customs records are incomplete did not change as a result of the regulation. In fact, the regulation changed no burden. Both before and after the regulation, and even if the court invalidates the regulation, claimants would need to decide whether they have a claim and if so, at least write a letter or fill out a form. Compliance with the regulation imposed no new economic burden.

## CONCLUSION

The court observes the <u>dicta</u> in <u>Swisher</u>, 205 F. 3d at 1368, which that court made in finding no time limit applicable prior to the regulations at issue, that Customs could "impose a time limit in the future." That is just what Customs did. It did so giving ample notice, both that legally required and through practical means, to all concerned, and the regulation gives rise to no cause of action.

Accordingly, this action is dismissed.

_____
Jane A. Restani
Judge

Dated: New York, New York

This 30th day of August, 2002.